THE HIGHLANDS CHEMICAL AND MINING COMPANY, Appellant, *v.* JOHN MATTHEWS, Respondent.

The parties entered into a contract April 25, 1873, by which plaintiff agreed " to supply " defendant with oil of vitriol for one year from date, " total amount to be called for to be not more than 10,000, nor less than 7,000 carboys," at a price specified.  The contract to ' terminate April 25, 1874, without reference to the number of carboys of acid delivered "  Defendant called for the 10,000 carboys before the expiration of the year; at its expiration there remained undelivered about 2,700 carboys.  In an action to recover for acid delivered under the contract, *held,* that the contract bound plaintiff to deliver the full amount, if demanded by defendant during the year; that it could not be construed as meaning such a delivery, if needed by defendant in his business, nor was the right of defendant to demand the full amount qualified by the clause quoted as the termination of the contract, and that, therefore, defendant was entitled to be allowed, as a counter-claim, the difference between the contract price and the market price of the quantity undelivered.

(Argued January 17, 1879; decided January 28, 1879.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, affirming a judgment in favor of defendant, entered upon a verdict.

This action was brought to recover the contract price for a quantity of sulphuric acid or oil of vitriol, alleged to have been sold and delivered by plaintiff to defendant.  The answer, among other things, set up as a counter-claim, and defendant proved that the acid in question was delivered under the following contract executed by the parties.

"*April* 25, 1873.

" The Highlands Chemical and Mining Company agrees

to supply Mr. John Matthews with oil of vitriol, 66°, for one year from date, at one and three-quarters (1¾) cents per pound. Total amount to be called for during that time to be not more than ten thousand (10,000) or less than seven thousand (7,000) carboys. The Highlands Chemical and Mining Company agrees to deliver said acid where Mr. J. Matthews shall desire, within New York city limits, in lots of not less than ten (10) carboys. Mr. John Matthews agrees to pay for the above acid as follows: The Highlands Chemical and Mining Company to render a statement of account for acid delivered during each month the first of that succeeding, which will be settled on or about the fifteenth, either by cash or a thirty day note, as Mr. Matthews may elect. Carboys to be charged at two dollars each, and kept on open account until the number of those unreturned shall exceed five hundred (500), when the balance so outstanding shall be paid at the settlement next ensuing, in the same manner as for the acid. Mr. Matthews further agrees, in accordance with a conversation between Mr. Willett and himself, March 7, 1873, to pay the difference between the amount of bills of acid delivered since that date calculated at last year's contract rate, and the present year's contract rate, the difference to become due at the settlement next ensuing, and in the same manner as of the acid. This contract will terminate April 25, 1874, without reference to the number of carboys delivered."

Defendant, before the expiration of the year, required plaintiff to deliver the full amount, 10,000 carboys; there remained undelivered at the expiration thereof about 2,700.

The court held that defendant was entitled, as a counter-claim, to the difference between the market price and the contract price of the quantity undelivered, which difference was fixed by the court at two and one-half cents per pound, and directed the jury to render a verdict for defendant for the difference between the contract price of the acid delivered and unpaid for, and defendant's damages so ascertained, to

which plaintiff's counsel duly excepted; a verdict was rendered accordingly.

Further facts appear in the opinion.

*Thomas M. North,* for appellant. It is competent for parties to a written contract to supply by parol an omission as to time and manner of performance. (*Davis* v. *Talcot,* 14 Barb., 611, 621–622; *Franchot* v. *Leach,* 5 Cow., 506; *Esmond* v. *Van Benschoten,* 12 Barb., 366.) If the rate or quantity had been definitely specified it would be competent to vary it by a subsequent parol agreement. (*Clark* v. *Dales,* 20 Barb., 42, 64; *Flynn* v. *McKeon,* 6 Duer, 203, 206; *Bishop* v. *Jackson,* 6 Robt., 287; *Blanchard* v. *Trim,* 38 N. Y., 227; *Plevins* v. *Downing,* 16 Moak Eng., 509; 1 C. P. Div., 220.) Stipulations and agreements subsequent to the execution of a contract are not within the rule by which parol evidence is excluded. (Chitty on Contracts [11th ed.], 154; 2 Cow. & H., note n, 985, 1477; *Bailey* v. *Johnson,* 9 Cow., 115, 118; *Erwin* v. *Sanders,* 1 id., 250; *Spangler* v. *Springer,* 22 Penn. St., 454; *Cummings* v. *Arnold,* 3 Met., 486, 491; *Stern* v. *Hall,* 9 Cush., 31.) No new consideration is necessary in such a case. (*Evans* v. *Thompson,* 5 East, 189, 193 ; *Van Buskirk* v. *Stow,* 42 Barb., 16 ; *Clark* v. *Dales,* 20 id., 64.) The agreement of June may be considered as a waiver by defendant of performance beyond fifty carboys a day, which it was competent to waive and prove by parol. (4 Barb., 614 ; 9 Pick., 298 ; 65 N. Y., 203 ; *Fleming* v. *Gilbert,* 3 J. R., 528, 531; *Young* v. *Hunter,* 6 N. Y., 207 ; *Wood* v. *Perry,* 1 Barb., 114 ; *Smith* v. *Gugerty,* 4 id., 614 ; *Munroe* v. *Perkins,* 9 Pick., 298 ; *Pechner* v. *Phœ. Ins. Co.,* 65 N. Y., 203 ; *Hadden* v. *Dimick,* 13 Abb. [N. S.], 135.) If a variation or departure from the exact contract was caused by defendant, the performance of the contract as so varied was sufficient. (*Leslie* v. *Knick. L. Ins. Co.,* 63 N. Y., 227 ; *Stewart* v. *Keteltas,* 36 id., 388 ; *Higgins* v. *Solomon,* 2 Hall, 482 ; *Farnham* v. *Ross,* 2 id., 167 ; *Borden* v. *Borden,* 5 Mass.,

67; *Cort* v. *Ambergate & R.*, 17 Q. B., 127; *S. C.*, 6 Eng. L. & Eq., 230; *Holme* v. *Guppy*, 3 M. & W., 387; *Thornhill* v. *Neats*, 8 C. B. [N. S.], 831.) If the plaintiff had the right to tender acid up to 7,000 carboys, defendant's refusal to receive was a breach of contract which barred his recovery for a subsequent breach on plaintiff's part. (*Cort* v. *Ambergate, etc., R. Co.*, 17 Q. B. 126; Eng. L. & Eq., 230; *Jones* v. *Barkley*, Douglass, 694; 1 Ferm. R., 545, 638.) The refusal estopped him from the demand he subsequently made. (*Fleming* v. *Gilbert*, 3 J. R., 521; *Mayor* v. *Butler*, 1 Barb., 338; *Carman* v. *Pults*, 21 N. Y., 549; *Moses* v. *Bierling*, 31 id., 462.

*Henry L. Burnett*, for respondent. There was no consideration sufficient to support any such modification of the contract as plaintiff claimed had been made. (*Fulton* v. *Matthews*, 15 J. R., 433; *Bailey* v. *Johnson*, 9 Cow. 115; *Miller* v. *Holbrook*, 1 Wend., 317; *Patchin* v. *Pierce*, 12 id., 61; *Kellogg* v. *Olmstead*, 28 Barb. 96; *Van Allen* v. *Jones*, 10 Bos., 369; *Stryker* v. *Vanderbilt*, 27 N. J. L., 68; *McCann* v. *Lewis*, 69 Cal., 296; Greenl. on Ev., § 303.) As it did not appear that plaintiff acted upon the notice not to deliver, which it claimed had been given, defendant was not estopped thereby. (*Lawrence* v. *Brown*, 5 N. Y., 394; *Chautauqua Co. R. K.* v. *White*, 6 id., 236; *Ackley* v. *Dygert*, 33 Barb., 176; *Catlin* v. *Grote*, 4 E. D. Smith, 296; *Todd* v. *Keer*, 42 Barb., 317.)

ANDREWS, J. We think the contract, by its true interpretation, bound the plaintiff to deliver to the defendant, during the year after its date, if required by him, 10,000 carboys of oil of vitriol, and the defendant to take at least 7,000 carboys, during the same time. The undertaking to *supply* the defendant with vitriol is equivalent to an agreement to furnish it. The defendant was bound to take the minimum amount, whether he needed or desired it for the purposes of his business or not; and the correlative obligation rested

upon the plaintiff to deliver any amount within the maximum fixed by the contract, if called for by the defendant. The contract of the plaintiff is not to supply an amount within the limits named, if needed by the defendant in his business. To introduce this qualification would be adding a new term to the contract. The plaintiff was a manufacturer of the commodity. The provision that the defendant should take at least 7,000 carboys, during the year, was introduced for its benefit. The contract fixes the measure of the supply at 7,000 or 10,000 carboys, at the option of the defendant. He could not demand more than 10,000 carboys, or refuse to take less than 7,000. The concluding clause of the agreement may have been inserted for more abundant caution, to repel the inference that any obligation would rest upon either party, after the expiration of the year, to deliver or receive any part of the acid not tendered or called for within that time. It cannot be held to qualify the right of the defendant to the whole 10,000 carboys, if demanded within the year, or relieve the plaintiff from the obligation to furnish it, if required.

The breach of the contract was conclusively established. The defendant, in April, 1874, demanded a delivery of acid, in addition to what had then been delivered, sufficient to make 10,000 carboys ; and of this amount there was undelivered, on the twenty-fifth of April, when the year expired, about 2,700 carboys. It is unnecessary to determine whether the defendant could postpone calling for any of the acid until the year was about to expire, and then call for the whole amount. The contract is silent as to when, during the year, the calls are to be made. It provides for a monthly statement of and payment for acid delivered ; and as the defendant required deliveries from time to time in his business, and as the plaintiff could only manufacture seventy carboys a day — which was known to the defendant — it was doubtless contemplated that the deliveries were to be distributed during the year. But the evidence shows that up to June, 1873, the deliveries were small, and this was the subject of frequent complaint by the defendant. The parties then, as the plaintiff claims, agreed

that fifty carboys a day should be taken to be the rate at which the deliveries should be made. This was a valid arrangement, and if the plaintiff had delivered fifty carboys a day from that time, the whole 10,000 carboys would have been furnished within the year. But it was not complied with. The plaintiff failed to deliver fifty carboys a day, but delivered a much less quantity. The defendant frequently called for more rapid deliveries, but these calls were not responded to. The defendant never refused to receive acid, and did nothing to justify the plaintiff in supposing that the whole amount would not be called for. On the contrary, the plaintiff must have understood, from the advance in the market price of the article, and the frequent complaints made by the defendant of the neglect to furnish the acid, that he would require the full amount to which he was entitled under the contract.

The judge at the trial directed a verdict. There was no controversy as to any of the material facts, and it was a case where a direction of a verdict was proper. But we think the court erred in respect to the damages, in allowing them at the rate of two and one-half cents a pound on the acid undelivered, instead of at two and three-eighth cents, which was the market price of the acid manufactured by the plaintiff.

The judgment should therefore be reversed, and a new trial ordered, unless the defendant consents to reduce the judgment, in the respect mentioned, in which case, the judgment, as modified, is affirmed, without costs to either party.

All concur.

Judgment accordingly.