# Diamond Alkali Co. *v.* Ætna Explosives Co., Inc., Appellant.

*Contracts—Sale—Contract for buyer's requirement for year— Monthly deliveries — Maximum and minimum clauses — Resale— Profits—Accounting.*

A seller is not entitled to an accounting for profits realized upon the resale of soda ash delivered to a buyer, a manufacturing con-

cern, under a contract which provided that the seller agrees to sell and the buyer agrees to buy, at designated price, "buyer's entire requirements during 1916; minimum quantity 180 tons per month and maximum 250 monthly," where there "were no understandings or agreements relative to the contract or its subject-matter that are not fully expressed herein." The buyer was entitled to receive the amount of soda ash stipulated in the contract whether it was required in the buyer's business or not, and it was, therefore, no concern of the seller what the buyer did with it.

Argued March 3, 1919. Appeal, No. 164, Oct. T., 1918, by defendant, from decree of C. P. Allegheny Co., No. 661, Oct. T., 1916, in equity, ordering an accounting in the case of Diamond Alkali Co. v. Ætna Explosives Co., Inc. Before Brown, C. J., Stewart, Frazer, Walling, Simpson and Kephart, JJ. Reversed.

Bill in equity for an accounting. Before Carpenter, J.

The defendant's third and fourth requests for conclusions of law and the answers of the court were as follows:

"Third. There is no evidence that the defendant ordered more soda ash than it had a right to order under the contract.

"Refused." (4)

"Fourth. Under the contract, the plaintiff was bound to deliver to the defendant and the defendant was bound to accept at least the minimum amount of soda ash called for in the contract, namely 180 tons per month, during the year 1916, and to this extent the contract was definite and certain as to the quantity of soda ash contracted for. Answer. Defendant had the legal right to call for 180 to 250 tons monthly, provided it needed that quantity in its business as a manufacturer. Plaintiff was not bound to deliver any soda ash not ordered by defendant." (5)

The court's second conclusion of law was as follows:

"Plaintiff is entitled to an accounting for all soda ash delivered to it by defendant in excess of requirements for

manufacturing explosives and for profits realized from sale or other disposition thereof." (7)

The court entered a decree requiring defendant to account to plaintiff for profits realized from sale of all soda ash received from the plaintiff, in excess of defendant's requirements in the manufacture of explosives.

The defendant appealed.

*Errors assigned* were, among others, (4) (5) refusal to affirm defendant's third and fourth requests for conclusions of law; (7) the court's second conclusion of law; (9) the decree of the court.

*B. J. Jarrett,* with him *McCook & Jarrett,* for appellant.—If the contract had provided for the "buyer's entire requirements for the year 1916," and nothing more, it would be invalid because of its indefiniteness: Crane v. Crane, 105 Fed. 69.

Oral evidence of any other understandings or agreements between the parties outside of the written contract is incompetent: Dimmick v. Banning, Cooper & Co., 256 Pa. 301.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* with him *William M. Robinson,* for appellee.—The word "requirements," as applied to a buyer, must necessarily refer to the commercial necessities or personal desires of the buyer, existing or in contemplation: Lima Locomotive & Machine Co. v. National Steel Castings Co., 155 Fed. 77.

OPINION BY MR. CHIEF JUSTICE BROWN, April 14, 1919:

The decree brought up on this appeal is that the appellant, the defendant below, account to the appellee for profits which it realized on the sales of soda ash delivered to it by the appellee in pursuance of a written contract between them, dated October 15, 1915. It is as follows: "The Diamond Alkali Company (seller) hereby agrees to

manufacture for and sell to Ætna Explosives Company, New York, N. Y., (Buyer) and Buyer hereby agrees to buy from Seller: Quantity: Buyer's entire requirements during 1916; minimum quantity 180 tons per month and maximum 250 tons monthly. Also 230 tons for shipment in equal monthly quantities during November and December 1915. Kind: 58% Light Soda Ash. Shipment: In carload lots. Price: $1.00 per hundred pounds, basis 58%, packed in bags. If shipped in bulk, 7-½c. per cwt. to be deducted from above price. Deliveries: F. O. B. Plainesville, Ohio. Terms: Cash in 10 days, less 1%. Payable in New York or Pittsburgh Exchange. Each shipment to constitute a separate sale, but failure of Buyer to fulfill terms of payment or to accept any shipment tendered in accordance herewith shall, at Seller's option, operate as an express refusal to receive any and all further shipments. Buyers must give Sellers at least 30 days' notice of their requirements for each ensuing month. Claims for errors, deficiencies or imperfections must be made in writing by Buyer to Seller within ten days after receipt of goods. Serious fires, strikes, differences with workmen, accidents to machinery, shortage of cars or any other causes unavoidable or beyond Seller's reasonable control, shall excuse any delay in shipments caused thereby. There are no understandings or agreements relative to this contract or its subject matter that are not fully expressed herein."

The case was disposed of below on bill and answer, from which the learned chancellor found six facts, the third and fifth being the only ones material in considering the question before us. They are: "Third. The shipments of soda ash, pursuant to orders from defendant, were less than the minimum specified in the agreement." "Fifth. Defendant purchased and plaintiff delivered soda ash which defendant did not use in its business as a manufacturer of explosives, and the excess quantity so obtained was sold by defendant at a profit." The decree was made on this last finding, the court below

sustaining the chancellor's construction of the contract, that under it the appellant could order only such quantities of soda ash between the minimum and maximum limits as were required in its manufacture of explosives.

There is not a doubtful or ambiguous word in the contract, and its concluding clause is, "There are no understandings or agreements relative to this contract or its subject matter that are not fully expressed herein." Notwithstanding this explicit declaration by the parties, the court below read into the contract, "Buyer's entire requirements in its business as a manufacturer in 1916." What the appellant's business was at the time the contract was entered into cannot be gathered from it. As a matter of fact it was a manufacturing concern, and the requirements of its business as a manufacturer during 1916 may not have been 180 tons of soda ash a month; but whether they were or not, it was bound by the terms of its contract to take that quantity from the plaintiff. The latter furnished it less. The minimum and maximum quantities fixed in the contract were not merely probable estimates of the quantities which the appellant was to take, as was the case in Marx v. American Malting Company, 169 Fed. Rep. 582, one of the authorities relied upon by learned counsel for appellee, but were definitely fixed quantities which the appellant could demand and the appellee was required to deliver. The latter was bound to hold itself in readiness to make shipments ordered by the appellant under the contract, and it, in turn, was bound to receive from the appellee the minimum quantity contracted for: Dimmick v. Banning, Cooper & Company, 256 Pa. 295. Though the appellant was so bound, it could not, under the lower court's construction of the contract, resell any portion of the minimum quantity which it was required to take, if it found that the entire quantity was not actually required in its business. There is no averment in the bill that it had acted in bad faith, or even knew that its orders, when given, were in excess of its requirements.

The mere averment is that it had ordered soda ash in excess of its requirements in its business of manufacturing explosives, and had resold the same. The question of bad faith on its part towards the appellee is not to be regarded as involved in this controversy between them. Their mutual rights and obligations under the contract are alone involved, and they are that for one year the appellee was to be prepared to deliver, and the appellant to take, not less than 180 tons of soda ash per month, with the right to demand 70 more each month. The right of each party to the contract is to enforce it against the other. The learned chancellor below, however, was of opinion, "If 250 tons monthly was the quantity required to meet defendant's needs it could have called for delivery of that quantity; but if 50 tons were sufficient it could not demand more."

The complaint of the appellee, sustained by the court below, is that the appellant perverted the contract in reselling what it was bound to take from the appellee. What terms in the contract did it pervert? What did it do that it was forbidden to do? To find the appellant guilty of "perversion" of the contract, as styled by the court below, words must be written into it, in the face of the clearly expressed intention of the parties to it that there were to be "no understandings or agreements relative to this contract or its subject matter that are not fully expressed herein." Reading of words into a contract was attempted in Highland Chemical Company v. Matthews, 76 N. Y. 145, where the contract provided that the plaintiff should supply the defendant with oil of vitrol for one year, "total amount to be called for during that time to be not more than ten thousand (10,000) or less than seven thousand (7,000) carboys." The defendant called for the maximum quantity, which the plaintiff failed to deliver. In a suit to recover for what had been delivered the defendant claimed as a set-off the difference between the market price and the contract price of what had not been delivered to him. The plaintiff there-

upon attempted to import into the contract words to the effect that the acid was to be used in the defendant's business, and that he had therefore no right to demand more than was required for that purpose. In holding that the contract could not be so construed, the court of appeals said: "The defendant was bound to take the minimum amount, whether he needed or desired it for the purposes of his business or not; and the correlative obligation rested upon the plaintiff to deliver any amount within the maximum fixed by the contract, if called for by the defendant. The contract of the plaintiff is not to supply an amount within the limits named, if needed by the defendant in his business. To introduce this qualification would be adding a new term to the contract." In the present case the parties to the contract fixed definitely the quantity of soda ash the appellant was obliged to receive and the appellee was obliged to deliver. It was, therefore, no concern of the latter what the former may have done with what it was bound to receive. If the price of the material had fallen, it would have been compelled to bear the loss, and there is no right in the appellee to an accounting from it for what it did with what was delivered to it under the contract between them.

The fourth, fifth, seventh and ninth assignments of error are sustained, the decree is reversed and the bill dismissed at the costs of the appellee.