Burke, Appellant, *v.* Daughters of the Most Holy Redeemer, Inc.

Argued May 11, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John B. H. Carter,* with him *Evans, Bayard & Frick, Desmond J. McTighe,* of *Fox & McTighe,* for appellant.

*John W. Kephart,* with him *C. Clark Hodgson* and *H. Eugene Heine,* for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1942:

This suit is to recover a commission for negotiating a loan for defendant. Plaintiff obtained a verdict but the court granted judgment for defendant n. o. v. The question, on appeal, is as to the propriety of that action.

Defendant is a non-profit corporation, a religious order of nuns, owning a large tract of land and buildings thereon, including a home for the aged. Having in contemplation the building of an addition to that home, defendant, on September 30, 1939, gave to plaintiff, in writing, authority "to obtain for us the best available Mortgage Loan Proposal on our property at Meadowbrook, including the additional building about to be erected. Upon your delivery to us of a Commitment which we consider acceptable, you will be paid 2% commission." On October 4, defendant signed an application to the Connecticut Mutual Life Insurance Company for a loan of $400,000, secured by a mortgage on the entire tract, for a period of five years at the rate of 4% per annum; $20,000 was to be repaid each year, with the privilege of paying $40,000 extra in any year for three years and of making full payment after three years. On October 6 the insurance company, in writing, approved the loan but on certain conditions, some of which were modifications of, others additions to, the terms set forth in the application; $20,000 was to be repaid each

year, with the privilege of making payments not exceeding in all $80,000 a year, this privilege to be cumulative in the event that it was not fully exercised in any year; there was no right given to defendant to pay off the entire loan after three years; a completion bond was to be furnished to include the insurance company as mortgagee; the loan was to be partially on a construction basis, $200,000 to be advanced on the security of the land and existing buildings, following which the cost of the new structure in excess of $400,000 was to be put up by defendant, so that the balance of $200,000 on the loan would at all times thereafter be sufficient to complete the building; no advances on the loan were to be made by the insurance company in multiples of less than $100,000; the new building was to cost "in the neighborhood of" $500,000, and complete plans and specifications were to be submitted for the insurance company's approval. The loan was not accepted by defendant and the proposed structure was never erected.

The obligation of defendant was to pay the commission to plaintiff upon his delivery to it of a commitment "which we consider acceptable," and the court below properly held that the word "acceptable," as thus used, was synonymous with "satisfactory." There is therefore applicable the principle established by the long line of cases beginning with *Singerly v. Thayer*, 108 Pa. 291, 2 A. 230, that under such a contract the test of adequate performance is not whether the person for whom the service was rendered *ought* to be satisfied, but whether he *is* satisfied, there being ,however, this limitation, that any dissatisfaction on his part must be genuine and not prompted by caprice or bad faith. Plaintiff concedes that the variance between defendant's application for the loan and the insurance company's proposal in response to it were so material that defendant would have been fully justified in not considering the commitment acceptable. Therefore, plaintiff admits, if defendant had felt and expressed dissatisfaction there would have been

no warrant whatever for imputing to it either capriciousness or bad faith.

The theory of plaintiff's case is that, while defendant would have been justified in finding the commitment unacceptable, it was in fact satisfied with the terms offered. This appears in the statement of claim, where it is averred that "the terms [of the commitment] were entirely satisfactory and acceptable to the said Mother [Superior], the duly authorized representative of defendant." The difficulty with this position is that plaintiff produced no evidence to support it. As soon as he received the commitment from the insurance company he presented it to defendant and asked for an "answer" and for "instructions to proceed." He was told to "wait." During the weeks that followed, plaintiff never asked defendant whether the terms of the loan were satisfactory nor did defendant ever express its views in regard thereto. After waiting until April, 1940, and being by that time apparently convinced that defendant had abandoned the project, plaintiff commenced suit. As defendant was under no legal duty to declare its position, its failure to speak did not warrant the presumption that it was satisfied; its silence was not equivalent to consent. There was no act either of commission or omission on its part which worked an estoppel or constituted a waiver of its right, when sued, to set up the defense that it did not consider the proposed terms acceptable. It is true that even if it had found the terms satisfactory it would not have proceeded with the undertaking because it was unable to obtain the Cardinal's approval for the project, but, whether the Cardinal approved or not, plaintiff presented no evidence that the insurance company's terms were acceptable. Therefore the court properly granted the motion for judgment n. o. v.

Judgment affirmed.

Mr. Chief Justice SCHAFFER did not participate in the discussion or decision of this case.