98 So.2d 781 (1957)
McALLISTER HOTEL, Inc., a Florida Corporation, Appellant,
v.
John E. PORTE, Appellee.
Supreme Court of Florida.
December 4, 1957.
Anderson & Nadeau, Miami, for appellant.
Dixon, DeJarnette, Bradford & Williams and H. Reid DeJarnette, Miami, for appellee.
*782 THORNAL, Justice.
Appellant, McAllister Hotel, Inc., which was defendant below, seeks reversal of a judgment in favor of appellee, Porte, who was plaintiff below in an action to recover a real estate broker's commission.
The determining point is whether Porte, the broker, produced a purchaser ready, able and willing to buy in accordance with the terms of an alleged brokerage agreement with McAllister Hotel, Inc.
In January, 1954, a New Jersey real estate broker named Zable associated Porte, a Florida broker, in the matter of attempting to interest the appellant in the sale of the McAllister Hotel in Miami. The two brokers represented to Myer Schine, the managing officer of appellant, that they had a party in New York who was interested in buying the hotel. As is generally known, the record reflects that the McAllister Hotel is a large downtown hotel in Miami consisting of something over 500 rooms. In addition to the actual hotel facilities there is a sizeable ground floor and arcade area which is occupied by numerous tenants who conduct commercial businesses subject to leases from the appellant. The hotel, of course, employs many key personnel in accordance with certain employment contracts and operates dining room facilities and other services ordinarily conducted by a large hotel enterprise of this nature.
The appellee broker claimed that after considerable negotiations, the buyer agreed to buy and Myer Schine, acting for the corporation, agreed to sell the hotel for a total price of $4,500,000 which was to include a cash payment of $1,000,000 with the balance to be represented by a mortgage payable over a period of 25 years bearing interest at the rate of five percent per annum and to be amortized by annual payments of $240,000 which would include interest. Porte claimed that the buyer was ready, able and willing to buy at the stated price and that Mr. Schine acting for the corporation indicated final acceptance of the deal by stating, "All right it is a deal, call up my attorney, Henry Williams and have the contract drawn up * * *." This was the sum of the alleged agreement between the parties as to the time of closing, disposition of existing employment contracts or leases, proration of taxes or insurance, the amount of a binder deposit, if any, and various important details that customarily enter into mortgages in transactions of this consequence, such as, for example, whether there would be a provision for receivership on default, the pledging of rents and profits, whether there would be a provision for acceleration on default and many of the almost innumerable detailed provisions that ordinarily are considered essential to such mortgages.
There was a blanket mortgage covering the McAllister and two other Schine hotels in the Miami area. Disposition of this mortgage apparently never entered into the preliminary discussions but inevitably it would naturally enter into the matter of the acceptability of the terms of sale so far as Schine was concerned. In fact it was the inability of the buyer and seller to agree on this that caused negotiations to deteriorate completely.
It is pointed out in passing that actually the property was never listed by the seller with the broker in the sense of the seller affirmatively entering into any specific arrangement with the broker. The whole problem arose out of the effort on the part of the brokers acting on their own initiative to bring the buyer and seller together. No contract was ever executed by the buyer or the seller and when negotiations with reference to the handling of the blanket mortgage collapsed, the entire proposed deal collapsed with it.
Porte the broker demanded his commission. Appellant refused to pay it. Thereupon Porte instituted this action alleging in his complaint that he was employed by the appellant "to find a purchaser ready, willing and able to purchase the said McAllister Hotel at and for a price and upon terms acceptable to the defendant." The *783 complaint further alleges that the broker did "procure a purchaser ready, willing and able to purchase at a price and upon terms acceptable to the defendant * * *."
The cause was tried before a jury with a resultant verdict in favor of the broker in the amount of $75,000, plus interest. Judgment was entered on this verdict and reversal of the judgment is here sought.
The appellant makes numerous contentions, the most critical being that the testimony failed to establish that the proposed buyer and seller ever actually agreed on all of the essential terms of the proposed contract and in the ultimate the broker failed to produce a purchaser ready, able and willing to buy on terms acceptable to the proposed seller.
Appellee Porte contends that the evidence was sufficient to support the verdict and that such being the case the judgment should not be disturbed.
In the often cited case of Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011, this Court undertook to delineate the distinction between a broker employed to sell as distinguished from a broker employed to find a purchaser. One who is employed to sell is not entitled to a commission until a sale is effectuated or until the broker procures from his customer a binding contract of purchase. If the broker is employed merely to find a purchaser he must either take from the customer a binding contract of purchase or in the alternative he must present to the seller a customer who is actually ready, able and willing to buy on the terms prescribed by the owner in the listing contract.
The alleged arrangement in the matter before us as reflected by the allegations of the complaint itself was that the appellee Porte was employed to find "a purchaser ready, willing and able to purchase * * * at and for a price and upon terms acceptable" to the appellant hotel corporation. Under such an employment agreement it is the responsibility of the broker therefore to produce a purchaser who is ready, willing and able to close the transaction not only for the stipulated price but upon other essential terms which are acceptable to the owner. Under such an employment contract obviously the seller reserves to himself a broad discretion in determining the acceptability of the price and terms tendered by the proposed buyer through the broker. In Burke v. Daughters of the Most Holy Redeemer, Inc., 344 Pa. 579, 26 A.2d 460, the Supreme Court of Pennsylvania held that the word "acceptable" when used in a contract to pay a broker a commission for obtaining a mortgage loan considered "acceptable" by the obligor was synonymous with the word "satisfactory." The test of adequate performance by the broker under such an arrangement is not whether the person for whom the service is rendered should be satisfied with the service but whether he is actually satisfied. The dissatisfaction of the obligor must, of course, be genuine and not inspired by ill faith or capriciousness.
In Townsend v. First Federal Sav. & Loan Ass'n, 153 Fla. 535, 15 So.2d 199, 200, we held that a provision of a real estate mortgage which required the mortgagors to keep certain buildings insured in a good and responsible insurance company "satisfactory to the mortgagee" should be construed as giving the mortgagee wide discretion in the choice of an insurer and the exercise of such discretion would not be controlled by the courts in the absence of fraud, or the arbitrary, unreasonable or capricious exercise thereof by the mortgagee.
Going back to the factual situation reflected by the record in the case before us it is perfectly obvious that the ultimate closing of the proposed transaction between appellant McAllister Hotel, Inc. and the proposed purchaser was contingent on the written contract that was to be prepared by Mr. Williams, as attorney for the seller, and to be approved by the attorney for the buyer. This point was never reached. Hence, it could not be concluded that the broker had produced a purchaser ready, able and willing to buy on terms "acceptable" *784 to the seller. True the parties may have been in accord on the base price but in his apparent enthusiasm to close the deal, the broker did not conclude the multitude of other terms essential to ultimate closing.
In a transaction of this nature which obviously involves a tremendous number of details the mere verbal accord between the parties as to the price is not the sole ingredient of the agreement to buy and sell sufficient to entitle the broker to a commission. See Herbert v. Jaffe, 281 Mass. 202, 183 N.E. 259; Hughes v. Daniel, 187 Ala. 41, 65 So. 518; Froedtert v. Haines, 5 Cir., 142 F.2d 338; Glendon v. Pyne, 275 Mass. 528, 176 N.E. 602; Skene v. Carayanis, 103 Conn. 708, 131 A. 497.
Another fact which should be mentioned is that Mr. Williams, the attorney for the proposed seller, prepared a non-contractual memorandum of the proposed understanding between the parties. This was to be used as the basis for negotiating with the holder of the blanket mortgage in an effort to obtain a partial release of the mortgage insofar as the McAllister Hotel was concerned. The proposed buyer on the advice of his own attorney declined to sign or approve this written memorandum. He made a counterproposal with reference to the handling of the blanket mortgage. This proposal involved some sort of arrangement whereby McAllister Hotel, Inc., would agree to secure or immunize the proposed buyer against default or liability on the blanket mortgage. The result was that the parties could not reach an accord and the whole deal collapsed.
We cannot read from this record that the appellant acted arbitrarily or unreasonably or was inspired by any caprice in declining to go through with the transaction under the circumstances. Appellant's officers merely concluded in the ultimate that the details or terms of the transaction could not be settled in a fashion acceptable to them and they therefore withdrew from the matter.
Our ultimate conclusion is therefore that the record before us fails to sustain the production of a purchaser "ready, willing and able to buy" on terms "acceptable" to the appellant seller. This being so the allegations of the complaint were not sustained by the evidence.
The judgment is reversed and the cause remanded for a new trial.
TERRELL, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.