Connell *v.* Avon Garage Company, Appellant.

Argued November 15, 1957.   Before JONES, C. J., BELL, CHIDSEY, ARNOLD, JONES and COHEN, JJ.

reargument refused February 5, 1958.

*Joseph F. McVeigh,* with him *Leonard B. Rosenthal, Joseph C. Mansfield,* and *Myers, McVeigh, Mansfield & O'Brien,* for appellant.

*Lewis H. Van Dusen, Jr.,* with him *Robert S. Ryan* and *Roland C. Heisler,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 8, 1958:
This appeal is from a judgment requiring the appel-

lant to pay a brokerage fee to the Connell Realty Company.

From the opinion of the court below the following undisputed facts appear: "This is an action in assumpsit brought by Kay G. Connell, trading as the Connell Realty Company, against the Avon Garage Company, Inc., for breach of contract. Plaintiff contends that the Connell Realty Company entered into a valid agreement with the corporate defendant whereby plaintiff was to be the exclusive selling agent for the sale of 'the Avon Garage Company, together with all goods, chattels, equipment, business, good will and real estate.'

"The contract was dated June 18, 1954 and by its terms could not be terminated without thirty days prior notice. No notice was given before the alleged breach and thus this contract, if valid, was in effect at that time. By the terms of the contract, defendant agreed to pay plaintiff five per cent of the sale price. The price was stated in the contract to be: '$125,000 cash or better, or $125,000 with reasonable financing.' Plaintiff alleges that, on October 25, 1954, she presented to defendant a prospective purchaser who was ready, willing and able to purchase at the agreed terms [$125,000 with reasonable financing] but the defendant refused to accept the offer. Plaintiff now seeks to obtain her commission having allegedly fulfilled her part of the bargain."

On this appeal the defendant corporation resists payment of the commission on two grounds:

(1) The price term in the agreement was ambiguous and erroneously construed by the court below, and

(2) The appellee did not produce a purchaser who was ready, willing and able to purchase at "$125,000 with reasonable financing."

Appellant's first contention—that the price term is ambiguous—is not supportable. The officers of the corporate defendant contend that this term ought to be interpreted as providing for a sales price of at least $125,000 if paid in cash, but if a mortgage were involved, the sale price would have to be greater than $125,000. We cannot agree.

The term reads as follows: "PRICE $125,000. Cash or better, or *$125,000 with reasonable financing.*" (Emphasis supplied). This provision on its face is clear and unambiguous, calling for either cash payment of the entire purchase price, which is to be $125,000 or more, or cash payment of a part of this purchase price with a reasonable credit arrangement for the balance. While "contracts apparently clear in their meaning may be shown by usage or the surrounding circumstances to be ambiguous or perhaps clearly to mean something different from the normal or ordinary meaning of their language," 3 Williston, Contracts 1748 (Rev. ed. 1936); *Warner-Godfrey Co. v. Sheinman,* 273 Pa. 105, 116 Atl. 671 (1922); *Electric Reduction Co. v. Colonial Steel Co.,* 276 Pa. 181, 120 Atl. 116 (1923), no such evidence appears in the record of this case. On the contrary, as is pointed out by the court below, the testimony indicates that the directors of the appellant were in nowise misled: "Two of the three directors had had prior, substantial, legal experience, and the third had been a government accounting clerk for thirty-five years.

"The agreement was in the hands of two of the directors and officers from June 8, 1954 until June 22, 1954 when they delivered it to plaintiff. During that time they did not attempt to contact their attorney to explain any alleged ambiguity in the contract.

"Significantly, there was testimony that an earlier offer had been made on or about October 25, 1954 to

purchase the Avon Garage for $120,000 with a $70,000 mortgage involved. That offer allegedly had been rejected because the price was insufficient, not because the offer involved a mortgage.

"Further, one of the directors testified that she and her sisters did not want to sell the property on October 25, 1954 *because the agreement had expired.*"

Although the defendant's officers may have intended to provide for a sales price in excess of $125,000 if credit financing terms were to be arranged, "their actual intent unless expressed in some way in the writing is ineffective, except when it can be made the basis for reformation of the writing." 3 Williston, op. cit. supra at 1751; *Diamond Alkali Co. v. Aetna Explosives Co.,* 264 Pa. 304, 107 Atl. 711 (1919). The absence of evidence in the record of fraud, accident or mistake as would justify a reformation of the contract in equity, at law prevents the defendant from circumventing the Parol Evidence Rule and contradicting the price term in the sales agency agreement.

We also find no error in the disposition by the lower court of appellant's second contention—that the offer presented by plaintiff was not an offer by a ready, willing and able buyer to purchase for "$125,000 with reasonable financing."

"The offer presented by plaintiff's purchaser was an offer to purchase the property for $125,000, made up of cash in the sum of $55,000 and a $70,000 purchase-money mortgage payable within ten years. Interest on the mortgage was to be at the rate of five per cent per annum and installments of principal of not less than five per cent were to be paid each year to defendant. Interest and amortization were to be paid monthly, quarterly, or semi-annually at defendant's option.

"An expert in this type of realty transaction, called by plaintiff, testified that a mortgage arrangement

calling for a down payment of one-third to forty per cent in cash is reasonable financing. In this case the proposed down payment was 44 per cent. In addition, the expert testified that, if the arrangement involved such a substantial down payment, a seller would look more to the 'basic value of the real estate as security for the loan, because in many of these cases, you see, straw bonds are used.' None of this testimony was contradicted. The court agrees that a purchase money mortgage covering only 56% of the purchase price would constitute reasonable financing entirely aside from the value of its accompanying bond.

"The prospective purchaser operated two other large garages at that time and had met large payments on a previous purchase. He testified that he had the means and intention of meeting the $55,000 cash payment. There was also testimony that he later offered in addition to make a $15,000 principal payment on the mortgage within the first year.

"Further, defendant contends that this financing arrangement was not reasonable from its vantage point as the debts of the corporation exceeded the $55,000 cash down payment. However, the secretary of the corporate defendant testified that the debts of the corporation in August, 1954, apparently including the capital gains tax payable on the proposed sale, did not exceed $55,200.

"In any event, there was no evidence that defendant's officers objected to the financial ability of the prospective purchaser at the time the offer was submitted by plaintiff."

The appellant further urges that *it* rather than the *court* should determine, after a consideration of all the factors involved, whether the proposed financing arrangement was "reasonable", or in other words,

whether the proposal was "satisfactory" or "acceptable" from its standpoint. "Reasonable" financing does not mean "satisfactory" or "acceptable" financing. While the latter terms imply a subjective test, *Burke v. Daughters of The Most Holy Redeemer, Inc.*, 344 Pa. 579, 26 A. 2d 460 (1942), reasonableness is an objective concept. *Casani's Estate,* 342 Pa. 468, 472, 21 A. 2d 59 (1941). Consequently, the determination by the lower court of the reasonableness of the financing arrangements was proper.

Having fulfilled her part of the bargain plaintiff is entitled to receive her commission.

Judgment affirmed.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.