## Shade-Central City School District v. Class of 1974 (No. 1)

*Eugene E. Fike, II, of Fike, Cascio & Boose,* for petitioner.

*James B. Yelovich, of Kimmel, Rascona, Yelovich & Bowman,* for respondent.

COFFROTH, *P. J.* May 24, 1976 — This case is here on the school district's petition for a declaratory judgment to determine a proper disposition of funds raised by respondent Class of 1974 during the senior year of 1973-74 and remaining unexpended at graduation. Respondent joins in the prayer for declaratory judgment.

The following are the essential

## FACTS

During the school year 1973-74, the members of the Shade-Central City High School Class of 1974, with administration approval and guidance, raised funds primarily to finance homecoming activities at the school, and for a class trip which was later taken to Ocean City, Md. The class activities were supervised by Mr. Andrew Muha as faculty adviser to the class. The funds were raised through the work of the class members in selling edibles such as submarine sandwiches (made by class members) and popcorn to the public.

The class had four elected officers, president, vice president, secretary and treasurer, but none of the officers acted as custodian of the funds. In accordance with regular school practice, all moneys collected were turned over to an administrative

employe of the district who made deposits and withdrawals when authorized and who maintained the record of the account of the fund. When information as to fund status was requested, it was furnished in approximate figures although no formal accounting was given.

At the end of the school year, there remained unexpended in the fund $1,173.96 which is the amount now in controversy. Prior to graduation, the class expressed its desire to have the money turned over to the class for use in financing a class reunion in the future, any balance to go to charity.

There is in evidence a school board policy or regulation governing "Student Activity Funds" which provides as follows:

"School activity funds may be expended only for the purposes which redound generally to the benefit of the student body of the school.

"School activity funds may not be used for special awards, medals, trophies, entertainment for athletics, etc., without the permission of the Board."

## DISCUSSION

In any controversy involving the powers and responsibilities of school districts and of school pupils, we are governed by the provisions of the Public School Code of 1949, Act of April 14, 1949, P.L. 460, as amended, its supplements and amendments. See Irwin Borough Annexation Case, 165 Pa. Superior Ct. 134, 67 A.2d 765 (1949). The provisions governing student activity funds are set forth in section 511 of the code.

The law grants ownership of the fund to the class under that portion of subsection (d) of section 511 which states:

"Such funds shall not be the funds of the school district but shall remain the property of the respective school, class, organization, club, society, or group."

The ownership granted to the class is not the sort of full ownership customarily incidental to the ownership of private property. Under subsection (d), the raising, expending and holding of funds by the class is placed "under the supervision of the principal or other professional employee of the school district designated by the board," the treasurer or custodian is required to furnish bond to the district in an amount and with sureties as the board shall approve, and the treasurer or custodian is directed to maintain an accounting system approved by the board, to deposit the funds in a depository approved by the board, and to submit a financial statement to the board quarterly or more often if directed by the board. In addition, the account is subject to offical audit as in the case of school district funds and accounts, and all purchases of supplies and materials in excess of $300 must be made upon solicitation of bids from the lowest responsible bidder under subsection (e). Compare code section 807.1, 24 P.S. §8-807.1, containing restrictions applicable to the school board in purchasing school materials and supplies.

The contention of respondent-class is that these controls and limitations upon class ownership and use of its funds continue only so long as the members of the class are students and are subject, as such, to the control of the district: 24 P.S. §5-510, and that thereafter when the class ceases to be a student class upon graduation from high school, the class members are entitled to the money free from school control. Counsel for the district con-

tends that ". . . since the business of the school is education, the school can only sponsor educational activities, and cannot, therefore, permit school sponsored organization funds to be diverted for other than educational purposes." There is no dispute as to the amount involved, and there is no issue respecting the manner or method in which the class funds have been previously handled or expended.

Unfortunately, section 511 of the code does not expressly answer our problem. It is clear that during student days, student funds are subject to a substantial measure of district supervision over them, including the purposes for which they are spent, but the code does not expressly state what shall be their disposition at graduation when the class ceases to be a student class. It thus falls to the court to search the statute for reliable indicia of the legislative intention, consistent with established canons of statutory construction. See Pennsylvania Consolidated Statutes of November 25, 1970, as amended, 1 Pa. C.S. §1921 et seq,

Initially, we should not that the controls imposed by the statute upon funds of student organizations are obviously designed to assure honesty and mature judgment in their handling. But honesty and wisdom are not issues in this case. The question here is whether the law imposes limitations or authorizes either of the parties to impose limitations upon the purpose for which funds remaining unused at graduation may be expended.

It should also be noted that subsection (d) imposes school supervision over the raising, expending and holding of student funds "including balances carried over from year to year," without stat-

ing whether or not existence of the fund "from year to year" after graduation is contemplated.

Our study must go beyond these mentioned clauses and focus upon the section as a whole. When this is done, we find substantial evidence of the legislative intent, as follows:

(1) Subsection (a) authorizes the adoption by the board of reasonable rules and regulations regarding " . . . exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and other *activities related to the school program,* including raising and disbursing funds for any or all of *such purposes* and for scholarships . . ." (Emphasis supplied.)

(2) Subsection (b) authorizes a class or organization, with board approval to affiliate with another organization " . . . whose purposes and activities are appropriate to and *related to the school program."* (Emphasis supplied.)

(3) Subsection (c) authorizes the board to permit use of school property by any class or organization " . . . for the purpose of conducting any activity *related to the school program . . . ."* (Emphasis supplied.)

It is clear from these provisions that the only authorized extracurricular activities are those which are related to the school program, consistent with the general principle of law that the only business of a public school district is education, and all else is beyond its authority (ultra vires). Public school districts exist only as the means through which the State carries out the constitutional mandate to "provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth": Article

III, sec. 14, Constitution of Pennsylvania. School districts thus exist for that specific purpose only and have limited attributes of sovereignty only for educational objectives; school districts have no general governmental power, and do not possess the police power of the State as do municipalities: School District of Philadelphia v. Zoning Board, 417 Pa. 277, 207 A.2d 864 (1965); In re Milford, Middlecreek and Jefferson Boundary Line, 28 Somerset 237, 241-42 (1973). An organization of public school pupils can function as an adjunct or representative of the school only for purposes which are related to the school educational program. For a student activity to be educationally related, it must not only be approved or sponsored by the school board, it must, in truth, be related functionally and in subject matter to the school program: Pease v. Millcreek Township School District, 412 Pa. 378, 195 A.2d 104 (1963). It follows in principle that fund-raising activities by any school-approved or school-sponsored student organization may be conducted only for educationally related activities, and that the funds which are the fruit of such activity must be used for such purposes and only for such purposes. Student activity funds are, therefore, impressed with a trust for educational purposes and may not lawfully be diverted therefrom.

Accordingly, the social or recreational benefit which students receive from class or organization activities and the expenditure of class or organizational funds is and must be incidental to the primary benefit which must be education-related, whether curricular or extracurricular. Thus, it is tradional in many public schools to sponsor a class trip to the Nation's Capital, or to places of histori-

cal significance, or to business and industrial plants, or to the outdoors for nature observation, and the like, all of which have instructional value and, as such, are related to school program. School homecoming activities, parental and community school exercises, and similar undertakings, are also of material benefit to the school program and are sufficiently related thereto to warrant board sponsorship and expenditure of school and student activities funds.[1] A post-graduation high school class reunion, as usually held, is essentially a private social affair, unconnected with school educational activity or goals. The fact that the social bond is the nostalgia of past school association does not furnish a sufficiently direct educational tie to warrant use of school or activities funds.[2] Consequently, the class fund may not be used for such reunion purposes. Contributions from the fund to a charity, while well-motivated, are likewise impermissible, unless they can be related to the school and its program.

---

1. In the record of this case, we are not told the purpose of the Ocean City trip. If it was for pleasure only, it may not have been sufficiently related to the school program. In Pease v. Millcreek Township School District, supra, the court held that a students' bowling club was not related to the school program for purposes of teacher supervision under code section 511(c)(3), even though the club was school-sponsored, where all expenses were individually paid and the club was not part of any school competition.

2. This is not to say that a public school board might not sponsor a class reunion program, and relate it more closely to school program, as is customary in colleges and universities which derive considerable advantage from alumni support and good will. But public schools generally conduct no such programs, and the Shade-Central District has none.

The language of subsection (d), making class-raised funds class property and not school board property, does not, therefore, establish private property rights in the usual sense of such property, as the respondent class contends. Rather, the subsection creates a qualified species of ownership, in the nature of a trust for educational purposes, similar to that impressed upon school taxes and school property. The chief difference between the two is that in class-owned property, the class has a degree of management and control, whereas school money and property are controlled solely by the board.

That we have rightly construed the intent and purpose of section 511 of the code is also supported by its legislative history. The original section 511 adopted with the code in 1949, contained only a brief paragraph authorizing the board to adopt rules and regulations regarding exercises, athletics and games and regarding the supervision of school organizations; it contained no provisions as to funds or financing. Nor was there any other provision in the code pertaining to such special funds as distinguished from the general fund of the district. It became apparent to the legislature later that year that some additional legislation was necessary or desirable as the result of the Superior Court decision in Hatfield Township School Dist. Auditors' Petition, 161 Pa. Superior Ct. 388 (1947), 54 A.2d 833 in which the court held that student organization funds belong to the school district on the principle that "where monies or property are derived directly or indirectly through the use of school buildings, or from the expenditure of public funds of the district, the monies thus derived are public property, must be handled exactly as tax

monies and be paid to the district treasurer": 161 Pa. Superior Ct., at 396.[3] As a result, section 511 of the School Code was substantially amended in 1949 by designating the original provision as subsection (a) and adding thereto provisions relating to the raising and disbursing of funds and the financing of school organizations, and by adding also subsections (b), (c), (d), (e) and (f) as completely new provisions. It is evident that the purpose of the amendments was to permit treatment of school organization funds separately and differently from strictly school funds by vesting a legal title and a measure of control in the organization, jointly with a measure of supervision and control in the board, without altering the fundamental principle that all school activities, funds and property must be devoted to school purposes.

The regulations adopted by petitioning school board, applicable to student activity funds, are not

---

3. The court recognized the distinction between organization-raised funds, and private funds given by students for a special purpose to a school official acting merely as agent for purchase or distribution. The court said (394-95): "In the so-called activity called activity accounts various situations obtain. Of course, if pupils give money to a supervising principal to purchase for them class jewelry or similar things, the school district has no official duty (although it may have a moral duty), for the supervising principal acts as agent of the pupils." No such payments are here involved. Compare Commonwealth v. Anderson, 65 Dauph. 222 (1953), where the court considered student-raised funds to be "district funds" within the meaning of section 2(6)(b) and 2(7)(d) of the Public Utility Code of May 28, 1937, P.L. 1053, as amended in 1951 authorizing pupil transportation without a certificate of public convenience when paid "from district funds." The latter requirement has since been deleted from the Public Utility Code. See 66 P.S.§1102 and historical note thereto.

particularly helpful here. The first regulation attempts to meet the problem of specifying the purposes for which such funds may be expended by limiting expenditures to "purposes which redound generally to the benefit of the student body of the school." If the regulation is aimed at controlling pregraduation expenditures, it would seem to prohibit the class from using the funds only for the class, even though the expenditure might be properly school related; we would doubt the validity of such a regulation. If the regulation is intended to apply only to post-graduate disposition, of unexpected funds, its effect would be to restrict expenditures to purposes related to the school program and, so interpreted, is valid, indeed required. The second regulation against use of funds for "special awards, metals, trophies, entertainment for athletics, etc.", also does not reach the present issues, by evidences an attempt on the part of the board to control the types of activity for which such funds may be expended.

One does not need to stretch the imagination very far to perceive the mischief which might result from a rule of law which would transfer unfettered to graduating classes the funds raised in school activities. In addition to the breach of trust which results, such a rule could provide the motivation for the organization to avoid educational expenditures during the school years in order to preserve funds for their own post-graduation reunions and other private goals unrelated to education. We recognize, of course, the proprietary feelings which the class members likely hold toward this fund, in view of their investment of hard work and effort. But expectations of private gain from school-sponsored projects are unrealistic.

The provisions of code section 511(d) for the carrying over of balances from year to year will necessarily have differing effects according to the type of organization involved. If the organization is one which survives the graduation of its members, and continues thereafter to exist as a student organization in the school, balances may be carried over from year to year as long as the organization continues and the purposes for which the money was raised are generally fulfilled. But where the organization is one which ceases at graduation as a student organization, such as the graduating class, indefinite or long-term continuation of the fund is not feasible. The members of a graduating class are no longer a "class" entitled to ownership and control of student-raised funds within the meaning of code section 511, which contemplates only student organizations and activities during student years. The school related objects of the class as a functioning organization are then terminated; the group has no further school-related purpose to justify its continuing existence as an association. After graduation, the group also loses geographical cohesion and will find it difficult, if not impossible to function. In our view, the code must be held to contemplate a liquidation at graduation, or within a reasonable time thereafter, of any remaining balances in graduating class funds by using the same for school related purposes.

We do not hold that there is a forfeiture of such funds to the district at graduation. We think the class is entitled to designate the school-related purpose to which their fund shall be applied, within the terms of reasonable rules and regula-

tions duly adopted by the board.[4] In the absence of resolution of the problem of class funds remaining unexpended or uncommitted at graduation by agreement between class and board, judicial resolution will continue to be necessary.

## DECREE

Now, May 24, 1976, it is ordered, adjudged and decreed as follows:

1. The moneys remaining unexpended in the

---

4. Subsection (d) of section 511 says that the board "shall" adopt regulations. Supervisory powers of the board over funds should be exercised in the form of rules and regulations of general application and future effect, see Pa. Human Relations Comm. v. Norristown Area Sch. Dist., 20 Pa. Commonwealth Ct. 555, 342 A.2d 464, 466, rather than by ad hoc decisions, as far as possible, in order to give full advance knowledge to all concerned and to promote equal treatment of like cases. A good set of rules and regulations will likely avoid many controversies. See Brown Case, 347 Pa. 418, 32 A.2d 565 (1943). Rules and regulations must be proved in litigation as any other fact. Thomas Appeal, 39 Lack. Jur. 41 (1938). In this case, the pleaded regulations are admitted. It must also be kept in mind that the board's power to adopt rules and regulations is not a power to make law, but only the power to act in subordination to, and to carry into effect the will of the legislature as expressed in the statute. Firemen's Relief Association of Wash. v. Minehart, 430 Pa. 66, 71, 241 A.2d 745 (1968). Rules and regulations must be reasonable, that is, they must have a rational foundation and must reflect equitable recognition of all legitimate interests in the subject matter. See 75 C.J.S. 634-638; compare University Park Cinemas, Inc. v. Windber Borough, 28 Somerset 1, 20 (1972). Reasonableness is an objective concept. See Connell v. Avon Garage, 391 Pa. 189, 137 A.2d 225 (1958). When the validity of properly proved rules and regulations is judicially challenged, the court will review and pass upon them for legality and reasonableness. See 78 C.J.S. 920, 922, §128.

school activities fund of the Shade-Central City Class of 1974 are impressed with a trust for purposes related to the school program.

2. The fund must be liquidated and applied to such a purpose or purposes to be designated within three months from this date by the respondent class of 1974.

3. In the event of failure of the respondent to make a timely designation of purpose, or in the event of any further dispute between the parties respecting disposition of the fund, either party may make application to the court for further relief under section 8 of the Uniform Declaratory Judgment Act of June 18, 1923, P.L. 840, 12 P.S. §838.

4. Costs on the fund.