742 So.2d 302 (1999)
EAST KENDALL INVESTMENTS, INC., Appellant,
v.
BANKERS REAL ESTATE PARTNERS, Appellee.
Nos. 98-939, 98-1418.
District Court of Appeal of Florida, Third District.
January 27, 1999.
Opinion Denying Rehearing October 13, 1999.
*303 Jay M. Levy of Jay M. Levy, P.A., Miami; Ira M. Witlin, Miami, for appellant.
Steven M. Silverman, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
COPE, J.
East Kendall Investments, Inc. ("seller"), appeals a final judgment after a bench trial, which awarded a real estate broker's commission and attorney's fees to defendant-appellee Bankers Real Estate Partners, Inc. ("broker"). We affirm.
The broker entered into an exclusive listing agreement with the seller to *304 sell an apartment complex for $3,950,000 at certain financing terms. The agreement provided that commission was to be paid if the broker, the seller, or any other party found a buyer "ready, willing and able to purchase the property at the terms and for the price specified" in the agreement.[1] The agreement was to expire on August 10, 1996.
On August 9, 1996, the Keyes Company presented on behalf of Dr. Reuben Sorkin ("buyer") a letter of intent that contained a purchase price of $3,400,000. On August 13, the buyer increased his offer to $3,950,000, the full asking price. On August 16, the seller presented a counteroffer of $3,995,000a figure above the original asking price. Negotiations continued until the buyer met the new asking price. On September 10, the seller orally accepted buyer's letter of intent at the new price. On September 11, Keyes prepared on behalf of the buyer a second letter of intent reflecting those terms. The seller did not respond to the letter and the transaction did not proceed. The trial court found that the seller was responsible for the failure to consummate the sale.
When the seller refused to pay the broker's commission, the broker filed suit, alleging that it was entitled to a commission because it had produced a ready, willing, and able buyer during the term of the listing agreement. As an affirmative defense, the seller contended that the broker had not met all conditions precedent in the listing agreement because any offer received before the agreement's expiration date did not comply with the terms of the agreement. After a bench trial, the trial court found that the broker had produced a ready, willing, and able buyer in accordance with the terms of the agreement. This appeal follows.
The seller contends that because the buyer's only offer before the expiration of the listing agreement was at a purchase price lower than the full listing price, the buyer could not have been ready, willing, and able. The seller says that whatever happened after expiration of the listing agreement was legally irrelevant. We disagree.
The broker's undertaking here was to find a ready, willing, and able buyer for the property. It is common experience that the listing terms are the starting point for negotiations, see Arthur R. Gaudio, Real Estate Brokerage Law § 145, at 200 (1987), and it is rare for the buyer's first offer to be the highest offer he is prepared to make. In determining whether the buyer was ready, willing, and able, the trial court was entitled to look at the parties' continuous negotiations, which extended beyond the expiration of the listing agreement and culminated in an above-full-price offer on terms orally accepted by the seller. See 1 Ralph E. Boyer, Florida Real Estate Transactions § 2.05[3] (1998); Sanson v. Dutcher, Higginbotham & Bass, Inc., 401 So.2d 913, 915 (Fla. 4th DCA 1981).
The seller next contends that the broker is not entitled to a commission in any event because the buyer had only presented a nonbinding letter of intent. The seller argues that since the buyer did not present his offer in a form which, if accepted, would be legally binding, it follows that he cannot be considered ready, willing, and able. Under the facts of this case we disagree, because the trial court found that the seller was responsible for the failure to consummate the sale.
The seller is correct in saying that a broker ordinarily is not deemed to have located a ready, willing, and able buyer where the buyer has presented the offer in *305 the form of a nonbinding letter of intent. As explained in the Restatement (Second) of Agency:

d. Effect of completeness of terms given broker. The principal may either specify all his terms or furnish the broker with only part of the terms, the price, for example, with the understanding that further details are subject to negotiations between the principal and the customer when found.
If the principal has given to the broker what purports to be his complete terms and the broker produces a customer ready, able, and willing to enter into the transaction on those terms, the principal cannot avoid paying the agreed commission by declining to enter into the transaction, or by insisting upon variations of or additions to such prescribed terms which the customer is unwilling to accept....
When the principal has furnished the broker with only part of the terms, with the understanding that further details are subject to negotiation between the principal and the customer, the principal, unless acting in bad faith (see § 454), is free to terminate such negotiations without liability to the broker. The principal's promise to pay the broker a commission does not become binding unless the principal and the customer reach a present definitive oral or written agreement. The broker has not earned his commission, even though the principal and the customer have drafted a memorandum of their proposed agreement, if they did not intend such proposed agreement to be presently binding upon them and hence reserved signature of the memorandum for a later occasion; at this point, if either the principal or customer withholds such final consent, no commission is due.

Restatement (Second) of Agency § 445 cmt. d (1958) (emphasis added); cf. McAllister Hotel, Inc. v. Porte, 98 So.2d 781, 784 (Fla.1957) ("In a transaction of this nature which obviously involves a tremendous number of details the mere verbal accord between the parties as to the price is not the sole ingredient of the agreement to buy and sell sufficient to entitle the broker to a commission.").
Similarly, as explained by Professor Gaudio:
It is commonly stated that in order for the broker to produce a ready and willing buyer the contract or offer must be a valid and binding one. While this statement is correct, one must be cautious not to overextend its meaning. Obviously, since contracts for the sale of land must be in writing, an offer or oral contract to purchase is not enforceable and cannot be binding. Nevertheless, as indicated above, an oral offer or contract to purchase on the listing terms is sufficient to demonstrate that the buyer is ready and willing. What is intended by the "valid and binding" requirement is that the offer, when accepted by the seller with the formality required by law, will become a valid and binding contract not subject to any conditions which might thereafter render it unenforceable against the buyer. As a result, when the contract is merely an "agreement to agree" in the future, or is an agreement subject to further negotiations between attorneys, or is merely an option, the broker has not yet produced a ready and willing buyer.

Gaudio, supra § 144, at 197 (emphasis added).[2]
Here, the listing agreement does not purport to set forth all of the seller's terms for the sale of a $3.9 million commercial property. The buyer's letter of intent was simply an "agreement to agree." Under ordinary circumstances, the presentation of the letter of intent would be insufficient *306 to demonstrate that the buyer was ready and willing.
However, the trial court found that the failure to consummate the sale in this case was the fault of the seller. The Florida Supreme Court has said:
The weight of authority is to the effect that where a broker in good faith and in reliance upon his contract procures a purchaser ready, able and willing to buy the property in accordance with the terms fixed by the seller, and before the broker can effect the sale or procure a binding contract of purchase the seller defeats the transaction, not for any fault of the broker or purchaser but solely because the seller will not or cannot complete the transaction, then and in such case the broker is entitled to his commission, if the customer remains ready, able and willing to purchase, although the sale has not been fully completed; the strict terms of the contract between principal and broker as to completing the sale or procuring a binding contract of purchase from the customer being deemed waived by the principal.
Knowles v. Henderson, 156 Fla. 31, 34, 22 So.2d 384, 385-86 (1945) (citations omitted).
This court has said, "Regardless of whether the employment contract requires the finding of a purchaser or a sale, the broker is entitled to a commission if the seller is responsible for the failure to consummate the sale." Quantum Realty, Inc. v. Lauderhill Apartment Investors, Ltd., 391 So.2d 228, 229 (Fla. 3d DCA 1980). The seller will incur responsibility, in other words, if the seller "acted arbitrarily or unreasonably or was inspired by ... caprice in declining to go through with the transaction...." McAllister Hotel, Inc., 98 So.2d at 784. On the other hand, there will be no liability for a commission if in the course of negotiation the parties are unable to agree on mutually acceptable terms for the transaction. See id.; Midtown Realty, Inc. v. Hussain, 712 So.2d 1249, 1252 (Fla. 3d DCA 1998).
In sum, the broker's undertaking here was to produce a ready, willing, and able buyer. When the buyer met the asking price, the seller raised the price, even though there was no competing bid. The buyer met the higher price, and the seller orally accepted the letter of intent. Thereafter the seller simply refused to proceed. The record supports the trial court finding that seller was responsible for the failure to consummate the sale, within the meaning of Knowles and Quantum Realty.
The seller also contends that even if the broker were entitled to a commission, the trial court erred in awarding the broker the full brokerage fee because the fee should have been split with the Keyes Company. This is a matter to be settled between the broker and the Keyes Company, however, not between the broker and the seller.
Affirmed.

On Rehearing Denied
COPE, J.
The seller contends that the broker is not entitled to a commission under the terms of the listing agreement because the listing agreement contained a "registration period" clause. Under this clause, the seller agreed to pay a commission if the seller agreed to sell the property within thirty days after expiration of the agreement, provided that the broker had registered the prospective buyer.[1] The seller *307 points out that although the buyer made the offer at the full listing price during the thirty-day window period, the seller did not orally accept this offer until the thirty-first day after the listing agreement expired and, as already stated, the seller refused to proceed and never entered into a written agreement at all. The seller urges that under the "registration period" clause, the broker took the risk that there would be no commission if there was no agreement within thirty days after the expiration of the listing agreement.
We are dubious that the "registration period" clause applies where there is a continuous course of negotiation which began before the listing agreement expired,[2] but assuming it applies, the court found as a factual matter that the failure to consummate the transaction was the fault of the seller. Having frustrated the agreement, seller will not now be heard to complain about having to pay a commission.
Rehearing denied.
NOTES
[1] The listing agreement is entitled "Exclusive Right of Sale Listing Agreement." The phrase "exclusive right of sale" generally signifies that the broker must effect a sale in order to be entitled to a commission. See 7 Fla. Jur.2d Brokers §§ 73,85 (1997). However, the body of the contract makes clear, as quoted above, that the commission is earned by finding a buyer ready, willing, and able to purchase the property.
[2] Professor Gaudio also explains that where the listing agreement specifies certain terms, "[a]n offer with any other terms would not be on the listing terms." Id. at 199 (footnote omitted).
[1] This clause stated:

E. REGISTRATION PERIOD. If Owner agrees to sell, lease, or exchange the Property, within 30 days after expiration of this Agreement, to a prospective buyer or tenant to whom Broker or any cooperating broker submitted the Property, Owner agrees to pay to Broker the Compensation set forth above, provided however, that the Broker or cooperating broker shall have registered that prospective buyer with Owner in writing during the term of this Agreement or no later than 30 days ... after the expiration of this Agreement. If the Property is relisted with another broker after the expiration of this Agreement, this Paragraph 4.E. shall not apply. The provisions of this Paragraph 4.E. shall survive the expiration of this Agreement.
[2] A requirement to register the prospect makes no sense where the parties are continuing to negotiate, in unbroken sequence, beginning before and continuing after the expiration of the listing agreement.