## Jenkins Towel Service, Appellant, *v.* Tidewater Oil Company.

Argued April 21, 1966. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Samuel Kagle,* with him *Oscar Brown,* for appel-
lant.

*Frederick L. Fuges,* with him *MacCoy, Evans &
Lewis,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 27,
1966:

Appellant, Jenkins Towel Service, Inc., was the
owner of certain real estate situate at the corner of
Eleventh and Vine Streets in the City of Philadelphia.
It entered into a purchase option agreement covering
this real estate with appellee, Tidewater Oil Company.
After one extension of the termination date of the op-
tion and a reduction in the purchase price, appellee ex-
ercised its option to purchase and the option agreement,
in accordance with its terms, thereupon became effec-
tive as a contract of sale between the parties.

Among the provisions of the sales contract appeared
the following pertinent paragraphs: "5. Seller agrees
that all necessary permits to construct, maintain, and
operate a gasoline service and filling station together
with permits for approaches and curb cuts *as required*

*by purchaser* have been or will be duly obtained by Seller at Seller's own cost and expense. All such permits shall be in full force and effect at the time of conveyance of title in accordance with the provisions hereof and shall at such time be assigned to purchaser. The contract of sale between Seller and Purchaser, which shall result from the exercise of this option by Purchaser, *shall be contingent upon Seller obtaining all such necessary permits without qualification, except such as may be acceptable to Purchaser.* Purchaser may, at Purchaser's option, assist Seller in obtaining such permits but no action on the part of Purchaser shall in any way relieve Seller of Seller's responsibility to obtain such permits. In the event Seller fails to obtain all necessary permits, Purchaser shall have the right, at Purchaser's option, to take such action as Purchaser may deem necessary to obtain such permits and Seller shall execute any and all instruments necessary to assist Purchaser.

"10. Seller agrees that upon any default by Seller in the performance of any of the obligations on the part of Seller to be performed hereunder, or the breach of any of the warranties and representations contained herein, or if the permits referred to hereinabove are not assignable or have not been obtained in Purchaser's name prior to the time of delivery of the deed, then Purchaser shall have the right to terminate this contract of sale and withdraw from the transaction upon written notice to Seller without further liability hereunder.

"11. Should purchaser terminate this contract in accordance with the provisions of Clauses 7 or 10 above, Seller agrees to reimburse Purchaser for the reasonable cost of title search and survey incurred by Purchaser, and Seller shall not be liable for any damages except the cost of title search & survey as stated above." (Emphasis supplied)

The sales agreement was entered into between the parties on November 29, 1960, and, on or about December 15, 1960, after its engineering and marketing studies of the site had been completed, appellee notified appellant that it required 2-25ft. curb cuts on Eleventh Street. Late in January of 1961, appellant notified appellee that the only permit that could be secured for the Eleventh Street frontage was for a single curb cut of 30 feet. Sometime later, appellant notified appellee that a permit could be secured for 2-15ft. curb cuts on Eleventh Street.

Upon the failure of appellant to provide permits in accordance with appellee's requirements, appellee terminated the agreement in accordance with provisions of paragraph 10, supra.

Appellant then entered into an agreement to convey the premises in question to another party for a price $24,000 less than the price stipulated in the agreement with appellee, and filed an action of assumpsit, seeking to recover as damages the $24,000 difference in sales prices. Appellee filed a counterclaim, seeking to recover $375 which it had expended for a title examination and survey of the premises, in accordance with the provisions of paragraph 11 of the agreement, supra. The matter was tried non jury and the trial judge made certain findings of fact and conclusions of law and entered a verdict in favor of appellee on both the appellant's claim and on the counterclaim. Appellant's exceptions were overruled and judgment was entered for appellee in the original action and against appellant on the counterclaim. This appeal followed.

"The findings of fact of a trial judge, sitting without a jury, sustained by the court en banc, have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal." *Schofield v. Crossman,* 420 Pa. 196, 216 A. 2d 455 (1966); *Barrist v. John Wanamaker Phila.,* 419 Pa.

106, 213 A. 2d 664 (1965); *Penneys v. Pa. Railroad Co.*, 408 Pa. 276, 183 A. 2d 544 (1962).

Among the findings of fact of the trial court, which findings were affirmed by the court en banc, and which our examination of the record reveals to be based on sufficient evidence, were the following:

"Defendant made every effort to accommodate its plans to the reduced curb cut measurements but could not make them conform to its requirements. Defendant, in addition, undertook to secure the permits that it required without success.

"Defendant repeatedly advised plaintiff that the alternative curb cuts and approaches suggested by plaintiff were not in accordance with defendant's requirements, but did so only after it made a bona fide effort to accommodate its plans to these alternate proposals.

"Defendant's curb cut requirements were reasonable and its refusal to accept the alternates proposed by plaintiff was not made in bad faith, was not capricious and was not motivated by dissatisfaction with any provision of the contract, but solely by the failure of plaintiff to secure permits for curb cuts and approaches in accordance with defendant's requirements.

"Defendant did not prevent or hinder plaintiff in any way in its efforts to obtain said permits and to the contrary cooperated fully in such efforts.

"Plaintiff's tender of permits for two 15 foot curb cuts on 11th Street did not satisfy defendant's requirements."

We must determine, in the light of these facts, whether appellee was justified in terminating the agreement of sale. The agreement between the parties required appellant to furnish permits for curb cuts as required by purchaser before appellee's performance could be required. Such a condition imposed on appellant a duty to satisfy appellee, a duty which appellant did not fulfill.

Such contracts are not strangers to the law of Pennsylvania and have been considered by us on numerous previous occasions. We have consistently held that where a contract provides for performance by one party to the satisfaction of the other, " 'the test of adequate performance is not whether the person for whom the service was rendered *ought* to be satisfied, but whether he *is* satisfied, there being, however, this limitation, that any dissatisfaction on his part must be genuine and not prompted by caprice or bad faith.' " (Emphasis in original.) *Kramer v. Phila. Leather Goods Corp.*, 364 Pa. 531, 73 A. 2d 385 (1950) ; *Burke v. Daus. of Holy Redeemer*, 344 Pa. 579, 26 A. 2d 460 (1942) ; *Singerly v. Thayer*, 108 Pa. 291, 2 A. 230 (1885). The court below found that the requirements were reasonable and that appellee's refusal to accept the tendered alternates was not made in bad faith and was not capricious. In the light of the standard of review set out above, we will not disturb these findings.

Appellant attempts to distinguish this situation from those in cited cases by asserting that the condition required by appellee was illegal, being in violation of regulations of the City of Philadelphia. While it is true that nonperformance of an illegal condition will not excuse the performance of the other party, the condition here in controversy cannot be branded as illegal. The curb cut requirements of appellee were not permissible within the limits of the City regulations, but exceptions and deviations from the regulations could have been granted by the Street Commissioner. Surely, the parties could have made appellee's performance specifically dependent on the grant of an exception, in which event appellant would clearly have failed to perform. Since exceptions were possible, the actual language of the agreement was tantamount to a requirement that a deviation from the normal standards

be obtained, should appellee's specifications require such deviation.

Inasmuch as appellant has failed to satisfy a condition on which appellee's performance depended, appellee was justified in terminating the agreement. It follows, then, that appellee was entitled to invoke the provisions of paragraph 11 of the agreement, supra, and the court below properly entered judgment for appellee on the counterclaim.

Judgment affirmed.

Mr. Justice ROBERTS dissents.

---

CONCURRING OPINION BY MR. JUSTICE COHEN:

I do not believe that appellee's requirement of two curb cuts twenty-five feet in width was an illegal condition. As the majority indicate, that requirement violated regulations of the Philadelphia Department of Streets, but could be cured by the grant of an exception or deviation by the Commissioner of Streets. Indeed, the ultimate purchaser of the site developed it for gas station use with two curb cuts measuring approximately twenty-two feet in width—seven feet wider than the standard established by the regulations.

Furthermore, even if there were no procedure by which an exception to the regulation might be granted, I do not believe that the condition would be illegal because there would be no violation of statutory or common law (Restatement, Contracts, §512, comments a and b), since the regulations of the Department of Streets do not have the force and effect of legislation. The question is in reality merely one of good faith on the part of the appellee for insisting on the requirements in question. The record reveals no evidence of bad faith on the part of appellee, its real estate supervisor or engineers, all of whom appear to have been ignorant of the department regulation, in establishing the twenty-five foot requirement. And I would not

find bad faith merely because their specifications exceeded those established by the Streets Department.

Hence, I concur.

Mr. Justice JONES joins in this concurring opinion.