392 A.2d 814

Martin D. COHEN and Marilyn A. Cohen, his wife, Appellees,

v.

Richard E. PARKER and Constance L. Parker, his wife, Appellants.

Superior Court of Pennsylvania.

Argued Dec. 12, 1977.

Decided Oct. 20, 1978.

David Freeman, Philadelphia, for appellants.

Gus Milides, Easton, submitted brief for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas of Northampton County, awarding plaintiff $5,000 in a real estate transaction case. The court en banc dismissed defendant's exceptions to the trial court's decision and sustained its findings. We affirm the decision of the court en banc.

The parties, plaintiff sellers and defendant buyers, entered into an agreement of sale on August 11, 1975, for the purchase of plaintiff's home. Attached to the agreement of sale was an addendum, prepared at the direction of the buyers, wherein the parties agreed the sale would be contingent on the buyers being able to sublet their apartment.[1] Buyer then deposited $5,000 in escrow with the real estate agency involved in the sale. In an attempt to sublet their apartment, buyers advertised the apartment for a price $20 under their rental fee. They advertised the property 15 times over a one-month period, but no offers were generat-

---

1. The text of the addendum reads:

"The Agreement is also contingent upon buyers subleasing apartment at 1301 Olympic Circle, South, Apt. 2, Whitehall, Pa. 18052 on or before Sept. 10, 1975. Said sublease to begin on or before November 1, 1975. If said apartment is not subleased by said date, then buyer may cancel this Agreement and all deposit monies shall be returned to buyers.  REP CLP MAC MDC.

"It is further agreed and understood between parties that if the Seller is not notified by Sept. 2, 1975 that said sublease as set forth above has not been effected, then the seller, at his option, may terminate said Agreement as of Sept. 2, 1975 and all deposit monies shall be returned to buyers.  REP CLP MAC MDC."  (Underlined parts were handwritten)

ed. On September 3, 1975, sellers prepared and executed an "Agreement" wherein they agreed to assume all responsibility for the buyers' lease as of November 1, 1975.[2] This "Agreement" was read to buyers over the telephone by the real estate agent that same day. Buyers indicated they wanted to reserve decision on it until they could examine the "Agreement," which they received on September 5, 1975.

During this period, sellers were negotiating with buyers' landlord in order to purchase a release of buyers' lease for a sum of $1,000. By letter of September 11, 1975, the buyers notified the real estate agent that they would not go through with the sale because they had not sublet their apartment as of September 10, 1975 as per the terms of the addendum. On September 12, 1975 the landlord agreed to the sellers' offer to purchase the release of buyers' lease obligations but did not accept the money when he discovered the buyers had cancelled the deal.

There was no evidence that buyers communicated to the sellers or the real estate agent their objections to the sellers' offer to buy the release of the lease. However, at trial, the buyer, Mr. Parker, testified that the offer was insufficient because it did not take effect until after the date of settlement, September 30, 1975, and he did not feel he could force the sellers to comply with the "Agreement" after settlement.

Plaintiff seller sued in assumpsit for the $5,000 deposit money as liquidated damages for buyers default in the sale. The lower court, in a non-jury proceeding, decided that the buyers acted in bad faith in an attempt to frustrate the sale by rejecting seller's offer to assume the lease and therefore plaintiffs were entitled to retain the $5,000 down payment as liquidated damages under the terms of the agreement of sale. This finding was affirmed by the court

2. The Agreement read in part as follows:
   "WHEREAS, it is agreed by the undersigned that they will assume all responsibility for said lease on apartment at 1301 Olympic Circle, Whitehall, Pennsylvania, as of November 1, 1975, will relieve the Parkers from any and all liability under said lease as of that date."

en banc. The issue before us is whether the buyers' rejection of the sellers' offer to purchase the lease obligation was in bad faith. In such a case, the findings of fact by the trial judge, sitting without a jury, sustained by the court en banc, are given the effect of a jury verdict and, if supported by sufficient evidence, will not be disturbed on appeal. *Jenkins Towel Service v. Tidewater Oil Co.*, 422 Pa. 601, 604, 223 A.2d 84 (1966). Our review of the facts discloses that there is sufficient evidence to support the findings of the lower court.

Appellants' major contention before us is that the terms of the addendum require them to obtain a subtenant for their apartment or cancel the sale. They claim they made a good faith effort to sublet by advertising the property at a price below what they paid in rent, thereby agreeing to absorb the excess costs. They also procured a mortgage for the property they planned to purchase. From these facts, buyers contend they should not be forced to accept a unilateral "Agreement" provided by the seller concerning the release of their lease obligations.

It is the law that a party may not materially alter the terms of the contract and thereby make the others' duty more burdensome. *Wilcox v. Regester*, 417 Pa. 475, 207 A.2d 817 (1965). However, the trial judge found that the sellers' offer in this case did not materially alter the burden on the buyers. Instead, the sellers' offer to accept assignment of the lease rather than a mere sublease lessened the burden on the buyers. Hence appellants' reliance on cases such as *Wilcox v. Regester*, supra; *King v. Clark*, 183 Pa.Super. 190, 130 A.2d 245 (1957), and *Tieri v. Orbell*, 192 Pa.Super. 612, 162 A.2d 248 (1960) is misplaced since these cases clearly deal with situations where the buyers would be forced to accept terms more onerous than those for which they contracted in the agreement of sale. However, the primary issue in this case was whether the buyers acted in good faith and not whether they should have accepted the sellers' offer.

■ As was stated by the court en banc, the buyers may have acted in good faith had they rejected the sale prior to receiving the sellers' offer in the "Agreement" to relieve them of their lease obligations. It was their actions after receiving the offer that evince a lack of good faith. The opinion of the court en banc informs us that buyers' counsel admitted the buyers were in the "driver's seat" concerning the consummation of the sale. The testimony of the buyer, Mr. Parker, that he was not satisfied with the offer is the first explanation furnished in this case in revealing his objection to the sellers' offer. As was stated in the opinion of the court en banc:

> "The Parkers' failure to contact either [the real estate agency] or the Cohens after receipt of the offer is not indicative of good faith . . . . The Cohens were never asked to alter the agreement to meet the Parkers' satisfaction . . . and the agreement reached on September 12 between [the landlord] and the Cohens belies the Parkers' concern."

We agree with the court en banc that *Jenkins Towel Service v. Tidewater Oil Co.*, supra, is controlling on this point. There, defendant-buyers agreed to purchase real estate from plaintiff-sellers if plaintiffs could obtain curbing permits of a specified footage to meet their plans for the property. Sellers were not able to obtain the permits at the footage required by the buyers. The buyers made a bona fide effort to adjust their plans to meet the footage on the permits actually obtained by the seller, but could not satisfactorily or successfully alter them to that extent. The court found the buyers' rejection was not made in bad faith since they had attempted to cooperate fully with the sellers to make the sale final. In the case before us, there was no cooperation on the buyers' part to communicate their objections to the sellers and thereby make the sale final.

This situation may be distinguished from *Hollander v. Friedman*, 360 Pa. 20, 59 A.2d 892 (1948). There, the buyers' rejection of the sellers' offer was upheld when it would have meant accepting a materially different structure than that

for which they bargained in the agreement of sale. In the instant case, the sellers' offer to purchase the assignment of the lease in no way changed the value of the premises to be sold to the buyers.

From the above analysis, we conclude there was sufficient evidence to support the findings of the lower court that buyers did not act in good faith.

Order affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.