422 A.2d 1074

**FIRST PENNSYLVANIA BANKING AND TRUST COMPANY**

v.

**Joseph LIBERATI, Defendant and Township of Haverford and Kassab, Cherry, Curran & Archbold, Garnishees and Reliance Insurance Company and New Enterprise Stone & Lime Co., Inc., Intervening Defendants.**

**Appeal of RELIANCE INSURANCE COMPANY.**

**FIRST PENNSYLVANIA BANKING AND TRUST COMPANY**

v.

**Joseph LIBERATI, Defendant and Township of Haverford and Kassab, Cherry, Curran and Archbold, Garnishees, and Reliance Insurance Company and New Enterprise Stone & Lime Co., Inc., Intervening Defendants.**

**Appeal of Joseph LIBERATI.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Filed Sept. 19, 1980.

---

Jeanne Ward Ryan, Philadelphia, for Reliance, appellant (at No. 1906) and for appellee (at No. 1952).

Joseph R. McFadden, Jr., Media, for appellant (at No. 1952).

George Pagano, Media, for First Pennsylvania Banking, appellee.

M. Eeileen Marquette, Philadelphia, for New Enterprise Stone, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

The instant litigation began when First Pennsylvania Banking and Trust Company (First Pennsylvania) entered judgment by cognovit note against Joseph Liberati (Liberati) on November 12, 1976. On December 2, 1976 a Writ of Execution issued attaching property in the hands of Kassab, Cherry, Curran and Archbold allegedly belonging to the defendant. Liberati then filed a Petition to Open the judgment which was granted. Reliance Insurance Company (Reliance) followed with a Petition for Leave to Intervene on the ground that it was entitled to $25,000 of the funds in

the possession of the garnishees. The petition was granted as was a similar petition by New Enterprise Stone & Lime Company. At trial on the merits a verdict was had against Liberati, to which he filed exceptions which were subsequently denied. From the denial of these exceptions Liberati appeals. The court also ruled that First Pennsylvania was entitled to the entire sum in the possession of the garnishees. Reliance filed exceptions to this ruling, which were denied. The court filed an opinion and order from which Reliance appeals. New Enterprise Stone & Lime Co. took no appeal.

The facts that brought about this appeal are as follows: On May 19, 1971, Liberati, a contractor, entered into a security agreement with First Pennsylvania whereby First Pennsylvania promised to make loans from time to time to Liberati, who in turn promised as security all his present and after–acquired accounts receivable and contract rights, as well as the proceeds therefrom, if any.[1] First Pennsylvania subsequently filed financing statements with the Prothonotary of Delaware County and the Secretary of the Commonwealth. By instrument dated April 30, 1975, First Pennsylvania agreed to lend Liberati the sum of $206,298.74 payable in full upon default and subsequent demand. In the interim, on April 24, 1974, Liberati and his wife Marie signed, in the presence of a notary, a Continuing Agreement of Indemnity with the intervenor–appellant, Reliance Insurance Company (Reliance). By the terms of this instrument Reliance agreed to act as surety for Liberati.

Liberati was later engaged by Haverford Township in connection with construction of a sewage system. Certain unspecified problems developed which led to arbitration and

1. The first paragraph of the security agreement reads as follows: "LOANS. Subject to the terms and provisions of this agreement, Bank will make loans to the Borrower from time to time to be secured by Borrower's Accounts Receivable. 'Accounts Receivable' herein includes all 'contract rights' now owned or hereafter acquired."

Although the validity of the security agreement as it pertains to after–acquired accounts receivable and proceeds, not to mention equipment and machinery, is tenuous, the parties did not raise the issue below and we need not consider it here.

Haverford was eventually determined to owe Liberati $63,-000 for services rendered. Because of the litigation and accompanying delay in payment, Reliance feared it would be obliged to pay out a substantial sum to subcontractors and materialmen under the terms of the bond. To avoid the effect of this possible result Reliance, by letter dated October 19, 1976 requested that the Township withhold payments to Liberati until arrangements could be made to reimburse Reliance for its expense. An agreement was reached and by letter dated November 16, 1976 Reliance released the funds in Haverford Township's hands with the understanding that the entire sum would be paid over to Kassab, Cherry, Curran and Archbold, Liberati's attorneys, with $25,000 of the $63,-000 to be accepted by the law firm on behalf of Reliance and the remaining $38,000 on behalf of Liberati. Upon receipt of the $63,000 Kassab, Cherry, Curran and Archbold were to pay out $25,000 to Reliance. After receipt by Kassab, Cherry, Curran and Archbold, but before distribution could be made, First Pennsylvania confessed judgment against Liberati and garnished by writ of execution the $63,000, thus preventing payment to Reliance. Upon petition by Liberati, the execution was stayed and the judgment opened. Reliance and the New Enterprise Stone & Lime Co., Inc. were permitted to intervene. Interrogatories were served and answered. The case was scheduled for a non–jury trial before Judge Diggins, who rendered a verdict for First Pennsylvania and subsequently denied exceptions presented by Liberati. Judge Diggins' findings are as follows: There was a continuing security agreement between the initial parties; First Pennsylvania had perfected its security interest; a loan was subsequently granted on a demand note; the confession of judgment was properly entered as there was a default on defendant's part; the security agreement included after–acquired property and proceeds; Haverford owed the defendant a debt; that said debt was proceeds of the original collateral. The court held as a matter of law that by virtue of a prior perfected security interest First Pennsylvania had an interest in the monies in the hands of Kassab, Cherry, Curran and Archbold, and that the plaintiff

bank could use "any available judicial procedure, under the Uniform Commercial Code 12A P.S. § 9–501 to enforce its rights in the collateral. Finally, Judge Diggins held that garnishment was an available procedure in such a case.

 It has been black–letter law in this Commonwealth for sometime that "the findings of fact by the judge, sitting without a jury, sustained by the court en banc, are given the effect of a jury verdict and if supported by sufficient evidence, will not be disturbed on appeal. *Jenkins Towell Service v. Tidewater Oil Co.*, 422 Pa. 601, 604, 223 A.2d 84 (1966)." *Cohen v. Parker*, 258 Pa.Super. 320, 324, 392 A.2d 814, 816 (1978). See also, *E. I. du Pont de Nemours & Co. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 236 A.2d 555 (1967). *Cf. Stauffer v. Stauffer*, 465 Pa. 558, 351 A.2d 236 (1976); *Charles v. Henry*, 460 Pa. 673, 334 A.2d 289 (1975). It is equally true that an appellate court is in no way bound by the trial court's conclusions of law based on its findings of fact. *Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1969); *Peters v. World Mut. Health & Accident Ins. Co.*, 206 Pa.Super. 406, 213 A.2d 116 (1965). Based upon the foregoing standards of review and our thorough review of the record below, it is clear that there is sufficient evidence to support all the trial court's findings of fact except one. The trial judge did not specifically find that the monies paid by Haverford Township to Kassab, Cherry, Curran and Archbold were held by the latter solely as agent for Liberati, but by reasonable inference from his reference to those monies solely by the total sum of $63,000, as well as reasonable inference from his finding that First Pennsylvania is entitled to full priority and that the attachment was proper, it appears clear that the trial judge implicitly found that Kassab, Cherry, Curran and Archbold acted as agents solely for defendant Liberati. This finding is supported neither by the pleadings nor the evidence adduced at trial. Both the garnishee, Kassab, Cherry, Curran and Archbold, and the intervenor, Reliance, answered the plaintiff's interrogatories by alleging that the $25,000 had previously been transferred to Reliance and that the garnishee held the sum as agent for

it. No contrary evidence was produced at trial. Under *Fleming v. Quaid*, 204 Pa.Super. 19, 201 A.2d 252 (1964) the plaintiff has the burden of proof as to the allegations set forth in its complaint, which burden has not been met. We find therefore that Kassab, Cherry, Curran and Archbold received $25,000 as agent for Reliance and $38,000 as agent for Liberati.

First Pennsylvania further contends that by virtue of its security interest in the $25,000 as proceeds under the security agreement it had with Liberati, it can attach the $25,000 which the garnishees held as agents for Reliance. It becomes necessary to consider the nature of a garnishment action and its effect on funds held by a garnishee for persons not originally party to the garnishment proceeding.[2] Under the law of garnishment in Pennsylvania, it is clear that a garnishor's rights extend only so far as do the rights of his debtor. *Antone v. New Amsterdam Cas. Co.*, 335 Pa. 134, 6 A.2d 566 (1939). " '[A]n attaching creditor necessarily claims through his debtor, and in the absence of fraud, can claim no greater right than was vested in the latter at the time the writ was served on the garnishee [citations omitted].' *LaBarre v. Doney*, 53 Pa.Super. 435, 438 (1913). *Accord, Collins v. O'Donnell*, 325 Pa. 366, 191 A. 22 (1937)." *Folmar v. Shaffer*, 232 Pa.Super. 22, 25, 332 A.2d 821, 823 (1974). See also *Tremont Twp. v. Western Anthracite Coal Co.*, 381 Pa. 276, 113 A.2d 234 (1955).

In *Bartram Bldg. & Loan Ass'n v. Eggleston*, 335 Pa. 42, 6 A.2d 508 (1939) the plaintiff entered judgment on a mortgage bond and attempted to garnish stock, in its possession, which had been pledged as collateral for a loan. Defendant petitioned to open the judgment based on the real defense that the stocks had been validly assigned to another. The court notes that attachment of the shares of stock

---

2. It should be noted that there was no evidence to show that the transfer of Liberati's interest in the fund to Reliance occurred as the result of his intent to defraud First Pennsylvania. Consequently, there is no evidence sufficient to support a Fraudulent Debtor's attachment pursuant to Pa.R.C.P. 1285 et seq.

*"might* have been done . . . prior to the assignment. But if [the defendants] no longer owned [the] stock at the date of the service of the writ, the attachment failed . . . ." *Bartram,* 335 Pa. at 47, 6 A.2d 508. There can be no question concerning the validity of the settlement arranged by Haverford Township, Liberati and Reliance. As the disposition of the accounts receivable qua collateral pertains to the security interest in First Pennsylvania, the question of validity is put to rest by UCC § 9–311. That section makes its unequivocally clear that a debtor's interest in collateral may be validly transferred even when subject to a perfected security interest, without the secured party's consent, contrary provisions in the security agreement notwithstanding. 12A P.S. § 9–311. That being the case, Liberati's arrangement with Haverford Township and the transfer of his collateral to Reliance is not invalid under the Uniform Commercial Code. Upon transfer of the funds by Haverford Township to Kassab, Cherry, Curran and Archbold on behalf of Reliance, Liberati lost all his interest in the collateral. He could not maintain an action to recover the funds and hence his creditor, First Pennsylvania, cannot go through him to reach the funds held by Kassab, Cherry, Curran and Archbold for Reliance. *Cf., Antone v. New Amsterdam Cas. Co., supra.* The attachment necessarily fails since the debtor, through whom the garnishor, First Pennsylvania, seeks to derive its right, has no interest in the $25,000 to attach. Even if the disposition of the collateral had been unauthorized, and under UCC § 9–306 First Pennsylvania's rights would have continued in the original collateral, garnishment would not have been a proper remedy under UCC § 9–501(1). Comment 3 to UCC § 9–306 reads in pertinent part:

In most cases when a debtor makes an unauthorized disposition of collateral, the security interest . . . continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subjects to the security interest, the security party may *repossess the collateral from him or in appropriate maintain an action for conversion.* 12A P.S. § 9–306, com. 3. (Emphasis added.)

Hence, "where a debtor sells collateral subject to a perfected security agreement, the secured party may proceed (1) against the debtor (a) to collect the debt on the original instrument, or (b) to assert his rights under the security agreement against any identifiable *proceeds in the hands of the debtor*, or (2) against the purchaser (a) by repossession of the purchased goods in person or by action in replevin, or (b) by an action in trespass for conversion of the collateral." *Beneficial Fin. Co. v. Colonial Trading Co.*, 43 D&C 2d 131, 132 (York Co., 1967). *Cf., American East India Corp. v. Ideal Shoe Co.*, 400 F.Supp. 141 (E.D.Pa.1975), *aff'd per curiam*, 568 F.2d 768 (3rd Cir. 1978). The same would follow for other valid dispositions of collateral.

The effect of the foregoing necessitates the reversal of the trial judge's conclusion of law that First Pennsylvania is entitled to the entire $63,000 by virtue of its perfected security interest. Although we do not dispute the validity of First Pennsylvania's superior interest, vis–a–vis Liberati, in the $63,000 Haverford Township owed the latter, we do not agree that garnishment is a "properly available judicial procedure" to pursue collateral once it is in the hands of a transferee who has given value, or his agent.

In light of our conclusion, we need not consider at this juncture Reliance's additional arguments concerning the sufficiency of First Pennsylvania's financing statements.[3]

In light of the foregoing we affirm the trial court's decision as to Liberati in No. 1952 and reverse as to the garnishment of Reliance's $25,000 in No. 1906.

It is so ordered.

---

**3.** See 12A C.P.S. § 9–402; and see *Heights v. The Citizens Nat'l Bank*, 463 Pa. 48, 342 A.2d 738 (1975) where the Supreme Court said: The description of collateral in a financing statement need not be specific or exact as long as it reasonably identifies the type of property in which a security interest has attached. Sections 9–110 and 9–402(1). It is sufficient if it provides enough information to put a person *on notice* of the existence of a security interest in a particular type of property so that further inquiry can be made about the property subject to the security interest. . . . Under Section 9–402(5) a financing statement is sufficient if it is not 'seriously misleading. . . .' " *Id.* 463 Pa. at 58–59, 342 A.2d 738. *Cf., Matter of Penn Housing Corp.*, 367 F.Supp. 661 (W.D.Pa.1973).