446 A.2d 316

**Donald W. MINTEER and Mavilla O. Minteer**

**v.**

**Kenneth E. WOLFE and Noreita Wolfe, his wife, and Darrel K. Lewis and Lesley K. Lewis, his wife, Appellants.**
**(Two cases)**

**Appeal of Mavilla O. MINTEER.**

Superior Court of Pennsylvania.

Argued May 20, 1981.

Filed May 28, 1982.

prosecutor was improper under the circumstances. See 42 Pa.C.S. § 5947 and *United States v. Roberts*, supra.

236

John B. McCue, Kittanning, for the Minteers.

Jerome D. Lombardi, Kittanning, for the Wolfes et al.

Before HESTER, POPOVICH and DiSALLE, JJ.

POPOVICH, Judge:

This is an action in quiet title involving an easement by prescription.

Appellant, Mavilla O. Minteer,[1] instituted the instant action to quiet title and to enjoin appellee-defendants from interfering with appellant's use of a lane located in Armstrong County, Pennsylvania. The lane in question, extending from a township road to appellant's land, traverses the boundary line of contiguous tracts of land owned by appellee-defendants. Appellant's claim to an easement is based on prescription or adverse use of the lane for a period exceeding twenty-one years.

Following a non-jury trial, an order nisi granting appellant-plaintiffs a prescriptive easement was entered. Appellees then filed exceptions which were adopted in part, and

---

1. The complaint was filed in 1978 by Mavilla O. Minteer and Donald W. Minteer, husband and wife. In 1979, Donald W. Minteer died and Mavilla O. Minteer, as surviving plaintiff and surviving spouse in a tenancy by the entireties, filed the instant appeal.

238

the lower court vacated its order nisi and entered a final order in favor of appellees.[2] These cross appeals followed.[3]

On appeal, appellant's sole contention is that the trial court erred when it held that because the record did not contain any *direct* evidence of usage by appellant's predecessor in title for certain initial years of the prescribed twenty-one year period, appellant failed to establish adverse use for the requisite period and, therefore, had not acquired an easement by prescription. We agree and reverse and remand for proceedings consistent with this opinion.

■ First, we recognize that findings of the lower court will not be disturbed on appeal absent a clear abuse of discretion or error of law. *See Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412 (1981). It is equally axiomatic, however, that this court is not bound by the trial court's conclusions of law but is free to draw its own inferences and conclusions from the facts as established. *First Pennsylvania Banking and Trust Co. v. Liberati*, 282 Pa.Super. 198, 422 A.2d 1074 (1980).

■ Moreover, we must review a claim to an easement in light of the following axiom: .

"The nature of the easement, whether it is seasonal, periodical, or for all periods of the year, the frequency and the extent of the user, its definiteness, and its location in city or rural districts are important factors in a determination of whether an easement exists and exactly what rights have been acquired thereunder." *Shaffer v. Baylor's Lake Ass'n, Inc.*, 392 Pa. 493, 499, 141 A.2d 583, 587 (1958).

2. In an answer filed with a counterclaim, appellees denied the existence of an easement and sought reimbursement for damages sustained by the removal of trees from their land by plaintiffs. The final order in favor of appellees was entered only with regard to the nonexistence of an easement by prescription because appellees failed to prove in their counterclaim that they had sustained damages as a result of appellant removing trees from their land.

3. For purposes of clearness, appellant at No. 991 (Mavilla O. Minteer) will be referred to throughout this opinion as "appellant" while appellants at No. 1024 will be referred to as "appellee-defendants" or "appellees."

Based on the foregoing standards of review, the facts in the instant case are as follows:

Appellant is the owner of a tract of land located in a rural section of Armstrong County. The only structures located on appellant's land are two working gas wells which have been operating since approximately 1918, and the ruins of "what appears to be" an old house. Appellant and her husband, who is now deceased, acquired title to the property in 1964 and, since that time, had used the lane as an access route for foot and motorized vehicular travel to their gas wells. The lane traverses the boundary line of appellees contiguous tracts of land and extends from a township road, over appellees' boundary line to appellant's land and the gas wells located thereon.

In 1975, appellees-defendants blocked appellant's access to the lane by erecting a cable across its entrance. Appellees obstructed the lane because appellant's husband, or those acting on his behalf, had begun to cut down trees to widen the lane for heavy vehicular traffic.

At trial, the evidence established that there exists no other discernibly traveled route to the gas wells. A government topographical map showed that the lane was in existence in 1900. A resident of the area, Olive Pennington, aged 81 at the time of trial, testified to the use of the land by her husband, an employee of appellant's predecessor in title, since 1957, or 18 years prior to the commencement of this action. She stated that her husband was using the lane as an access route to service the gas wells and that he had obtained the job in 1957 because his brother, who had been employed in the same capacity for the preceding forty years, had passed away that year. Pennington further stated that her husband used the lane to gain access to the gas wells because this was the longstanding practice of his employer.

Appellant's husband's partner in the oil and gas business, Arthur Baker, testified that prior to appellant's acquiring title to the property, his partner's predecessors in title drove him to the gas wells via the lane in question. When Baker first saw the road in 1957, eighteen years prior to the

commencement of this action, the lane appeared as if it had "been there for a long time . . . like it had been traveled and wore [sic] down over the period of years." (N.T. 11/3/78, p. 45). He stated that the lane runs directly to the gas wells, then continues beyond the wells to the ruins of a dilapidated structure. Baker opined that the lane originally was used as a horse and buggy road to travel to this structure. This evidence was uncontradicted at trial.

Based on the foregoing, the lower court concluded that appellant had failed to establish adverse use from 1954 to 1957, the first three years of the prescriptive period. We disagree.

■ To begin with, it is axiomatic that "[w]hen a right or title is of ancient origin or where the transaction under investigation is so remote as to be incapable of *direct proof* . . . the law, of necessity, relaxes the rules of evidence and requires less evidence to substantiate the fact [in] controversy." *Hostetter v. Commonwealth*, 367 Pa. 603, 606, 80 A.2d 719, 720 (1951) (emphasis added).

Moreover, with respect to whether *direct evidence* is required to establish adverse use for an uninterrupted twenty-one years, we have said that:

> [T]he evidence need not show a constant use in order to establish continuity; rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right. *Keefer v. Jones*, 467 Pa. 544, 548, 359 A.2d 735, 737 (1976).

■ Herein, we conclude that there existed substantial evidence to "show a settled course of conduct" by appellant's predecessors in title for those years where direct evidence was unavailable and, accordingly, that appellant had acquired a prescriptive right to use and enjoy the lane in question.

The record established that the lane was the only access route to the gas wells and that the wells had been operating since approximately 1918. In this connection, we note that

while the testimony of Olive Pennington established only that her husband, as an employee of appellant's predecessor in title, traveled the lane in a pick-up truck eighteen years prior to appellees' interference in 1975; he had obtained the job upon the death of his brother who had been employed in the same capacity for the preceding forty years. Moreover, Pennington stated that her husband used the lane because it was his employer's practice to do so. *See, e.g., Keefer v. Jones*, 467 Pa. 544, 549 n.1, 359 A.2d 735, 738 n.1 (1976) (where direct evidence did not establish constant use but both of appellee's predecessors in title were shown by direct evidence to have used road on numerous occasions and for many years over thirty-three year period, an inference that they also used it for periods where direct evidence was unavailable might well have been properly drawn); *Steel v. Yocum*, 189 Pa.Super. 522, 151 A.2d 815 (1959) (where witness, aged seventy-three, testified to use of lane by plaintiffs' predecessors sixty-seven years prior to suit and other witnesses testified to use for consecutive periods in excess of twenty-one years, plaintiffs evidence as to use "extensive and convincing"). Second, witnesses for appellant opined that the lane previously was an old "horse and buggy" road that served as the sole access route to what "appeared to be an old house" formerly existing on appellant's property. One of the appellees stated that he knew of the lane's existence since 1952, or twenty-three years prior to this action, and also was aware that hunters were using the lane at that time. Finally, photographs and a government topographical map demonstrated that the lane existed as a horse and buggy road as long ago as 1900. *See Predwitch v. Chrobak*, 186 Pa.Super. 601, 142 A.2d 388 (1958) (right by prescription created where testimony showed that road in question had existed "beyond the memory of living witnesses" and was used not only by those claiming the easement but also by the general public).

Under these circumstances, we conclude that appellant and her predecessors in title exercised a property right over the lane in question that was adverse, continuous, open,

242

notorious, and in excess of twenty-one years. More specifi-
cally, our review of the record leads us to conclude that an
easement by prescription was established despite·the absence
of direct evidence of use by· appellant's predecessors in title
during the initial three years of the prescriptive period.
Accordingly, we reverse the trial court's decision ·as to
Minteer at No. 991.

■ In their cross-appeal, appellees ask us to determine
whether appellant ʼis precluded from acquiring by prescrip-
tion a right to use the lane either (1) by application of the
Act of 1850,[4] which prevents acquisition of an easement
through unenclosed woodlands; or (2) by appellant's alleged
failure to present evidence of more than occasional use of
the easement or of its specific location. Appellees also
question whether appellant's use of the lane (assuming,
*arguendo*, that a prescriptive easement was established)
should be restricted to servicing the gas wells and exclude
any right to motorized vehicular travel.

.With regard to appellees' first contention, our own Su-
preme Court has said: "[T]he act [of 1850] . . . admits of but
one meaning, viz. that a right by prescription to a road
through unenclosed woodland cannot be obtained." *Kurtz v.
Hoke*, 172 Pa. 165, 173, 33 A. 549, 550 (1896). Likewise, this
court has said that "the character of the land itself is
determinative of the application of the Act of 1850." *Hum-
berston v. Humbert*, 267 Pa.Super. 518, 521, 407 A.2d 31, 32
(1979).

Herein, the record establishes that the land surrounding
the lane was not woodland within the meaning contemplated
by the Act of 1850. Rather,· the growth that appellees
alleged was woodland consisted of a fence row of trees and

4. Act of 1850, § 21, 68 P.S. § 411 (1965). The Act provides:
No right of way shall be hereafter acquired by user, ·where such
way passes through uninclosed [sic] woodland; but on clearing
such woodland, the owner or owners thereof shall be at liberty to
enclose the same, as if no such way had been used through the
same before such clearing or enclosure.
This Act, repealed in 1974, was reenacted and given retroactive
application to the date of repeal by virtue of Act No. 1981–61 (1981).

brush as is commonly found to exist on the boundary lines of land located in rural areas. Hence, the Act of 1850 does not operate to bar appellant's acquisition of a prescriptive right to use and enjoy the lane.

Appellees next argue that a prescriptive easement was not established because the record did not contain either evidence of anything other than an occasional use of the lane or evidence of its specific location. Again, we disagree.

■ First, it is well-settled that "day-to-day use [is not] required to satisfy the continuity element essential to the creation of prescriptive rights." *Adshead v. Sprung,* 248 Pa.Super. 253, 257, 375 A.2d 83, 85 (1977). Likewise, what our Supreme Court said in *Shaffer v. Baylor's Lake Ass'n, Inc.,* 392 Pa. 493, 141 A.2d 583 (1958), is instructive:

"[the] inability to measure the exact width of [a] footpath for 21 or more years will not defeat a prescriptive right-of-way over this footpath which has been acquired by adverse user for 21 years, *nor is the law so unreasonable as to require that the path be used and trod 24 hours each day, or the same hour each day." Id.,* 392 Pa. at 499, 141 A.2d at 587 (emphasis added).

■ In the instant case, the evidence established a settled course of conduct by appellant and her predecessors in title, viz., use of the lane as an access route to the gas wells located on appellant's land for a period in excess of 21 years. Moreover, the specific location of the lane was established by government maps and also by the testimony of witnesses for both parties. Hence, this contention also must fail.

■ Finally, appellees argue that the scope of the easement should be restricted to servicing the gas wells and should not include any right to motorized vehicular travel. In this connection we recognize that because an easement by prescription is created by adverse use, it is limited to the use made during the prescriptive period. *Bodman v. Bodman,* 456 Pa. 412, 321 A.2d 910 (1974). Here, the record reveals that the lane was used during the prescriptive period for single lane ingress and egress to the gas wells by various

244

motor vehicles. We cannot now say that such single lane passage of motorized vehicles increases the scope or extent to which the easement was used during the prescriptive period. Accordingly, appellant is entitled to use the lane for single lane travel by motorized vehicles to service the gas wells.

Order at No. 991 reversed and Order at No. 1024 affirmed.

DiSALLE, J., did not participate in the consideration or decision of this case.