## In re EASTERN FIRE PROTECTION, INC., Debtor.

### Bankruptcy No. 82–05706K.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 8, 1984.

---

Jay G. Ochroch, Philadelphia, Pa., for debtor.

Michael D. Betts, Warminster, Pa., for Pasquale Monaco.

## OPINION

WILLIAM A. KING, JR., Bankruptcy Judge.

The issue at bench is whether to allow the claim of a former employee of the debtor for medical expenses over the debtor's objection. The debtor objects to the claim on the grounds that the employee was not covered by the corporation's group employee health insurance plan at the time the expenses were incurred, and furthermore, that the majority of the claim was satisfied by another insurance carrier. For the reasons stated herein, we will grant the debtor's objection and disallow the claim.

The facts relating to the claim are as follows: [1]

Pasquale Monaco became an employee of the debtor corporation in September, 1980. He was then informed that the corporation did not provide group health insurance coverage for its employees, but the corporation was negotiating with Connecticut General for such a plan. Mr. Monaco's health insurance policy with his former employer expired near the end of November, 1980.

In December of 1980, Mr. Monaco was asked to fill out an insurance application form in order to receive coverage from the corporation's new group insurance policy with Connecticut General. He completed the forms and returned them to the corporation on January 30, 1981. On February 13, 1981, the President of the corporation, John Keelan, informed Mr. Monaco that his application form had been rejected by Connecticut General due to inadequate information. The application form was returned to Mr. Monaco in order for him to supply additional information about his medical record. Three (3) days later, on February 16, 1981, Mr. Monaco suffered a back injury from lifting steel pipe and was subsequently hospitalized. He received workmen's compensation while recuperating from the back injury. Although Mr. Monaco met with a rehabilitation counselor from the workmen's compensation carrier to discuss returning to work, he never returned to work for the debtor.

In August 1981, he suffered a heart attack and was again hospitalized. His wife's health insurance policy covered the majority of his medical expenses from the heart attack. Sometime in April, 1981, Mrs. Monaco had obtained health insurance coverage for her husband under a policy with her employer. Through this coverage, Mr. Monaco was able to pay approximately $15,800.00 of his medical expenses. Mr. Monaco claims he paid $4,000.00 in addition out of his own pocket.

A Chapter 11 petition in bankruptcy was filed by the debtor corporation in November, 1982. The proof of claim filed by Mr. Monaco seeks reimbursement from the debtor for $19,800.00 in medical expenses related to the heart attack in 1981. A hearing was held on August 16, 1984, to consider the proof of claim and the debtor's objection. At the hearing, Mr. Monaco produced bills in the amount of $18,694.44 for

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

medical expenses related to the heart attack. He testified that he paid approximately $4,000.00 in medical bills out of his own pocket because of deductibles under his wife's insurance policy with John Hancock. The balance of the claim, or approximately $15,800.00, was paid by his wife's insurance carrier.

When questioned at the hearing concerning why he should be reimbursed by the debtor for his out of pocket expenses, Mr. Monaco replied as follows:

Q Mr. Monaco, are you aware that the charges that you are attempting to seek under the column P. Monaco are all deductibles under your wife's policy?

A They are all deductibles, yes.

Q Is it your position that under the Connecticut general policy that you claim you should have had, that you would have paid no deductibles?

A Well, I am trying to think of the word that you use, but when you have a policy by one company and you're covered by another, they usually pick it up and you don't have a deductible to pay.

Q. Can you prove that?

A. Can I prove it?

Q. Can you prove that both companies would pay you?

A. Not pay me, they would pay the bill, and I would not have a deductible to pay.[2]

 A proof of claim which has been duly filed under section 501 of the Bankruptcy Code and the Bankruptcy Rules is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The filing of the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f).

The filing of a proof of claim has been said to be tantamount to the filing of a complaint in a civil action, *see Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir.1962), and the trustee's formal objection to the claim is considered to be the answer to the claim. 3 *Collier on Bankruptcy*, ¶ 502.01 p. 502–16 (15th ed. 1984).

Although the Bankruptcy Rules do not specify whether the claimant or the objecting party carries the burden of proof, Collier observed that:

"When ... the trustee does make his objection within the procedural guidelines of Bankruptcy Rule 9014, that trustee carries the burden of going forward with the evidence on the issue concerning his view of the validity and the amount of the claim ... If the trustee succeeds in overcoming the prima facie effect given to the claim ... the burden, however, remains on the claimant to prove the validity of his claim by a preponderance of the evidence. The burden then rests on the court to determine whether or not the claimant has prevailed, with due regard to the probative value of the proof of claim, for, after all, whether or not the claim is to be allowed in the face of a contest remains a judicial determination. ... Upon the filing of ... objections, the trustee is then called upon to produce evidence and show facts tending to defeat the claim. Such evidence must be of a probative force equal to that of the allegations of the creditor's proof of claim. While the burden of ultimate persuasion is always on the claimant, and while probative force is given to the allegations in that creditor's proof of claim, the trustee nonetheless carries the burden of going forward to meet, overcome, or at least equalize, what operates in favor of the creditor by the force of section 502(a) and the Rule.

Of course it should not be assumed that the creditor carries no responsibility of offering proof of the validity or the amount of the claim. The fact is that until the trustee, as objector, has put in evidence concerning invalidity or excessiveness of amount, the claimant need do nothing, assuming of course, a proper proof of claim has been executed and filed in accordance with the statute and

---

**2.** N.T. p. 40.

with the Bankruptcy Rules. *But once the trustee, as objector, has introduced evidence as to the invalidity of the claim or the excessiveness of its amount, or as to any affirmative defense going to the allowability of the claim, it would seem that the burden rests on the claimant to introduce rebutting evidence for it is the claimant's burden of ultimate persuasion."*

(emphasis added)

(footnotes omitted) 3 *Collier on Bankruptcy,* ¶ 502.01, pp. 502–16—502–18 (15th ed. 1984).

 In the case at bench, there is a factual issue as to whether the claimant was covered by the debtor's insurance policy for the medical expenses arising from his heart attack in 1981. The debtor's position is that he was not covered by the company's policy because he was no longer an active employee of the debtor in August of 1981. As such, he was no longer eligible for health insurance benefits.

The debtor's position was substantiated by the testimony at the hearing. Mr. Keelan, President of the debtor corporation, testified that he spoke with Mr. Monaco in late February or early March of 1981, just after Mr. Monaco was injured, and informed him that he was no longer eligible for health insurance coverage and other benefits because he was no longer an active employee of the corporation. (N.T. pp. 45–46, 62–63) This testimony was unrebutted by Mr. Monaco. When questioned about the substance of his conversation with Mr. Keelan, Mr. Monaco replied that he didn't believe he was covered by health insurance after his back injury, but he thought he had the option to buy insurance. (N.T. pp. 33–34, 15) Mr. Keelan never made any representations to Mr. Monaco or members of his family that he was covered by the corporation's health insurance policy for expenses related to the heart attack. (N.T. p. 51–52) Rather, Mr. Keelan stated that he would discuss providing health insurance coverage for Mr. Monaco when he returned to work. (N.T. p. 57)

In conclusion, the debtor put forth convincing evidence at the hearing to show that Mr. Monaco was not covered by the corporation's benefit plan after his back injury. The evidence further showed that Mr. Monaco was aware that he was not covered. In the absence of any evidence of a written or oral agreement that the debtor was obligated to provide Mr. Monaco with medical insurance after he left work on February 16, 1981, we find that the claimant has failed to carry his burden of ultimate persuasion and the claim must be disallowed in its entirety.